Barbara EKLOF

v.

**BRAMALEA LIMITED, and Paul Mux-worthy, and Michael Goman and Randi Lauseng and Gregory Goleff.**

Civ. A. No. 89–5312.

United States District Court, E.D. Pennsylvania.

Oct. 27, 1989.

Stephen Ansole, Philadelphia, Pa., for plaintiff.

Jeffrey Braff, Philadelphia, Pa., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

This is a civil rights case involving the alleged wrongful firing of the plaintiff, a black female, by defendants, Bramalea Limited, as a result of race discrimination. Before me now is defendants' Motion to Dismiss Count I, alleged violation of 42 U.S.C. § 1981, and Count II, wrongful discharge tort based upon alleged violation of public policy against race discrimination. For the rationale which follows I will grant both motions.

### I. *Background.*

Plaintiff is a black female who began working for defendant, Bramalea Limited, on or about February 11, 1985. While employed by Bramalea, plaintiff claims she performed her duties in a manner of competency and professionalism in excess of other similarly situated managers. She alleges that during her employment with Bramalea certain employees of defendant, including management level employees, made racially derogatory and slurring comments concerning her. On or about July 14, 1987, plaintiff was fired. She claims that she was wrongfully discharged as a result of racial discrimination.

### II. *Rule 12(b)(6) Standard.*

Fed.R.Civ.P. 12(b)(6) instructs a court to dismiss an action for failure to state a cause of action only if it appears a certainty that no relief could be granted under any set of facts which could be proved.

*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Because granting such a motion results in a determination of the merits at such an early stage of the plaintiff's case, the trial court "must take all well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665–66 (3d Cir.1988) (*quoting Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985)).

## III. *Discussion.*

Defendants seek to have this court dismiss Counts I and II of the plaintiff's Complaint, alleging that two recent opinions, *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) and *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917 (1989), require dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. I shall address these claims and the corresponding arguments for dismissal in sequence.

### A. Count I: Alleged Violation of 42 U.S.C. § 1981

■ Count I of the Complaint alleges that plaintiff was wrongfully fired by defendants as a result of race discrimination and that certain employees of defendant Bramalea Limited, including defendant Muxworthy, made racially derogatory and slurring comments regarding plaintiff. Plaintiff alleges that by these acts the defendants violated 42 U.S.C. § 1981, the Civil Rights Act of 1866. Defendants argue that under the United States Supreme Court's recent decision in *Patterson,* such allegations do not state a cause of action under 42 U.S.C. § 1981.

The parameters of § 1981 with respect to employment discrimination were recently delineated by the Supreme Court in *Patterson.* The Court limited the substantive protections of § 1981 to those redressing discrimination in the " 'mak(ing) and en-force(ment)' of contracts alone", finding that claims outside the scope of these two specific rights, such as "breach of the terms of the contract or imposition of discriminatory working conditions", are not actionable. —— U.S. at ——, 109 S.Ct. at 2373, 105 L.Ed.2d at 151. The first protection extends only to the formation of contracts and does not include problems that may arise later from the conditions of employment. The second guarantee protects an employee only from employer conduct which impairs the employee's ability to enforce his established contractual rights through the legal process. *Id.*

The *Patterson* Court's interpretation of the scope of § 1981 makes clear that the plaintiff's allegations of the defendants' racially derogatory and slurring comments regarding her are not actionable under § 1981. Although such conduct is reprehensible if true, it does not involve discrimination in the making or enforcement of her employment contract as those terms were defined in *Patterson.*

■ Similarly, plaintiff's allegation of discrimination in her discharge is not actionable under § 1981. Discriminatory employment termination is post contract formation conduct, not protected against by § 1981, as it does not involve the right to make or enforce a contract as those terms were defined in *Patterson.*

■ Plaintiff further argues that defendants impaired her right to make a contract because they refused to consider her for the very position she vacated when she was fired due to alleged racial discrimination. Plaintiff bases her belief that the *Patterson* Court would permit such a claim under § 1981 on the following language of the opinion:

> Of course some overlap will remain between the two statutes [Section 1981 and Title VII]: specifically a refusal to enter into an employment contract on the basis of race. Such a claim would be actionable under Title VII as a "refus[al] to hire" based on race ... and under § 1981 as an impairment of "the same right ... to make ... contracts ... as ... white citizens."

*Patterson,* — U.S. at —, 109 S.Ct. at 2375, 105 L.Ed.2d at 154. However, as the defendant points out, the balance of the paragraph quoted makes clear that the Court was distinguishing between initial hiring, where there is no pre-existing employment relationship, and post contract formation conduct (such as termination) which involves an existing employment relationship. It is only the former which can state a cause of action under Section 1981. The balance of this paragraph states:

> But this is precisely where it would make sense for Congress to provide for the overlap. At this stage of the employee-employer relation, Title VII's mediation and conciliation procedures would be of minimal effect, for there is not yet a relation to salvage. *Id.*

Plaintiff had a pre-existing employment relationship with the defendants. Their alleged discriminatory conduct "implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII (than by § 1981)." *Id.* — U.S. at —, 109 S.Ct. at 2373, 105 L.Ed.2d at 151.

Moreover, the *Patterson* Court's discussion of the circumstances in which a promotion decision might be actionable under § 1981 makes it clear that termination of employment on the basis of race may not be maintained under § 1981. The Court stated that "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and employer is such a claim actionable under § 1981." *Id.* — U.S. at —, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. Rehiring an employee into the very position from which she was discharged was clearly not what the Court contemplated as a "new and distinct relation".

Furthermore, even if plaintiff is correct in interpreting *Patterson* to allow a § 1981 claim for refusal to consider an applicant for a position where the applicant was previously terminated, based on race discrimination, plaintiff's § 1981 claim still cannot stand. Plaintiff did not re-apply for the position from which she was terminated nor did she apply for any other position with the defendant. Consequently, plaintiff cannot complain that the defendant impaired her right to make a contract by refusing to hire her since she never applied for any position with the defendant after she was fired. Plaintiff's claim for violation of 42 U.S.C. § 1981 must therefore be dismissed.

B. Count II: Tort of Wrongful Discharge on the Basis of Race

■ Count II of the Complaint states that the defendants' discharge of the plaintiff was in violation of the public policy of Pennsylvania against race discrimination and that the defendants' conduct constitutes a commission of the tort of wrongful discharge. Defendants argue that the Pennsylvania Supreme Court's recent decision in *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917 (1989), dictates that plaintiff has failed to state a cause of action for the tort of wrongful discharge in this case.

The *Clay* Court held that "the PHRA [Pennsylvania Human Relations Act] provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination". *Id.* 559 A.2d at 918. The Court cited with approval a previous Superior Court decision, wherein it was held that, "in order to assert a claim for wrongful discharge from employment which is cognizable under the [PHRA] ... an aggrieved party must utilize administrative remedies available through the PHRC [Pennsylvania Human Relations Commission] before asserting a cause of action in court." *Clay* at 918, citing *Householder v. Kensington Manufacturing Co.,* 360 Pa.Super. 290, 520 A.2d 461 (1987), appeal denied, 516 Pa. 629, 532 A.2d 1137 (1987). Furthermore, the *Clay* Court noted that "[a]llowing a discharged employee to commence an action in the courts without first exhausting administrative remedies would be logically inconsistent with the legislature's having created the PHRC to function as an efficient mechanism for handling such disputes." *Id.* 559 A.2d at 918.

Plaintiff admits that she did not pursue the administrative remedies mandated by the PHRA. Nevertheless, plaintiff asserts that her Complaint states a cause of action even after the Pennsylvania Supreme Court's decision in *Clay*. She argues that *Clay* does not apply because her first attorney failed to inform her that it was necessary to file charges within a specific time period and that *Clay* is therefore distinguishable. Plaintiff's reliance on this argument to distinguish her case from *Clay* is misplaced. The reason the *Clay* plaintiffs failed to pursue the statutory remedy set out in the PHRA is not discussed in the opinion, nor is there any indication in the opinion that a plaintiff's reasons for failing to pursue the statutory remedy are relevant.

Plaintiff further argues that her reason for failing to pursue the statutory remedy is relevant because the rationale supporting the *Clay* decision is inapplicable where there was no intention to "circumvent the PHRC by simply filing claims in court." *Clay* at 920. However, just as with plaintiff's argument regarding her reasons for failing to pursue the statutory remedy discussed above, nothing in the *Clay* opinion suggests that an individual's motives for not pursuing the statutory remedy are relevant. The *Clay* Court pointed out that, in establishing the right to a remedy for discrimination in employment, the legislature declared this a "civil right which shall be enforceable as set forth in this act." PHRA, 43 P.S. § 953. The legislature's use of the word "shall" as opposed to "may" expresses its clear intent to make the administrative procedures a mandatory rather than a discretionary means of enforcing the right. See *Clay* at 919. The Court did not indicate that any circumstances would be sufficient to justify ignoring the statutory mandate.

Plaintiff's final argument in support of her cause of action in Count II of the Complaint is that employment discharge arising from race discrimination may be actionable at common law. *Clay* noted that "as a general rule, there is no common law cause of action against an employer for termination of an at-will employment rela-

tionship" and that "exceptions to this rule have been recognized in only the most limited of circumstances." *Clay* at 918, citations omitted. The Court then held that, notwithstanding the limited exceptions, "in as much as appellees failed to pursue their exclusive statutory remedy for sexual harassment and discrimination in the work place they are precluded from relief." *Clay* at 919.

The racial discrimination claim alleged here is more closely analogous to the sexual discrimination claim denied in *Clay* than it is to the few cases that have recognized the public policy exception. Accordingly, the Court finds that plaintiff's claim of wrongful discharge due to racial discrimination does not qualify as an exception to the general rule that there is no common law cause of action against an employer for termination of an at-will employment relationship. Plaintiff's claim for the tort of wrongful discharge must therefore be dismissed.