937 F.2d 603
 58 Fair Empl.Prac.Cas. 63, 56 Empl. Prac.
Dec. P 40,864
Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert L. HOLLAND, Plaintiff-Appellee,
v.
FIRST VIRGINIA BANKS, INCORPORATED, Donald D. Brennan,
Defendants-Appellants.
 No. 90-2203
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1991.
Decided July 12, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CA-90-64-A)
 Gerald S. Hartman, Anderson, Kill, Olick & Oshinsky, Washington, D.C., (Argued), for appellants; Gregory W. Homer, Anderson, Kill, Olick & Oshinsky, Washington, D.C., Kathleen T. Barlow, Falls Church, Va. on brief.
 Victor Michael Glasberg, Victor M. Glasberg & Associates, Alexandria, Va. (Argued), Jeanne Goldberg, Victor M. Glasberg & Associates, Alexandria, Va. on brief.
 E.D.Va.
 REVERSED.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and JANE A. RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Robert L. Holland filed suit in the United States District Court for the Eastern District of Virginia in January 1990 against his former employer, First Virginia Banks, Inc. (the Bank), and his former supervisor, Donald Brennan. The complaint alleged violations of Holland's rights under 42 U.S.C. Sec. 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000 et seq.; and Virginia common law, predicated on Holland's having been the victim of racial harassment at work, discharged in retaliation for filing an EEOC claim on this account, and subsequently denied re-employment for the same reason.
 
 
 2
 The Bank filed a motion to dismiss Holland's claim in its entirety, arguing that the complaint failed to state a claim for relief under Section 1981 in light of the Supreme Court's pronouncements in Patterson v. McLean Credit Union, 491 U.S. 164 (1989). In that case the Court held that employer conduct subsequent to the formation of the employment contract is no longer actionable under Section 1981. The district court denied the Bank's motion.
 
 
 3
 Holland's Section 1981 claims and state law claims then went to jury trial, followed by a bench trial on the Title VII claims. Responding to the Bank's motion for a directed verdict, the district court ruled that under Patterson Holland's claims of racial harassment and discriminatory discharge should not go to the jury, but that there was sufficient evidence to send the failure to rehire claim to the jury on the ground that the claim alleged the Bank's refusal to make a new contract with Holland.
 
 
 4
 The jury found for the Bank and Brennan on the state law emotional distress claim and for Holland on the Section 1981 claim. The jury awarded Holland $20,000 actual damages, $1,000 punitive damages against Brennan, and $50,000 punitive damages against the Bank. Subsequently, the district court entered findings of fact and conclusions of law in favor of Holland on his Title VII claims, and awarded Holland a total of $87,388.13 in costs and attorneys' fees. This figure included a 75 per cent multiplier of the lodestar amount of attorneys' fees as an enhancement for the "exceptional result" obtained.
 
 
 5
 The Bank filed post-trial motions, all denied by the district court, to obtain a judgment notwithstanding the verdict or a new trial, and to vacate the award of punitive damages or grant remittitur. This appeal followed.
 
 I.
 
 6
 Holland went to work for the Bank as a maintenance employee in September 1988 after having served in the United States Army from July 1967 to January 1988. Holland's immediate supervisor at the Bank was Donald Brennan, who was responsible for the maintenance of the Bank's facilities in the Northern Virginia area and was given the power to hire and fire maintenance employees. During his ten-month employment with the Bank, Holland received good performance evaluations and a seven per cent raise.
 
 
 7
 Holland worked out of the same office as did Brennan, who supervised Holland's daily work. Holland was the first black employee in that particular facility, and early in his employment he was warned by a fellow-employee that he should be careful on that account. Within two months after Holland began work at the Bank, Brennan began to refer to Holland by racially derogatory terms such as "Chicken Little," "Watermelon Man," and "Boy." Other employees also used such terms to refer to Holland in Brennan's presence without reprimand. A sign entitled "Chicken Little" or "Love that Chicken" was placed on Holland's in-box in the office. The sign was not removed until some three weeks after Holland complained to one Ambrosi, a Bank vice-president.[1]
 
 
 8
 Holland and fellow employees interpreted this name-calling as evidencing stereotyped concepts of the eating habits of black people. Although Holland felt demeaned and humiliated by this conduct, he did not immediately complain because he thought that this might be a form of new employee hazing which would soon cease. The offensive conduct continued, however, and was expanded to include the use of the word "nigger" in reference to Holland out of his presence. In March 1989 Holland finally complained to Brennan about the name-calling. Brennan responded that Holland was "too sensitive" and laughed off his complaint. The name-calling persisted until June 1989, when Holland complained to Shirley Beavers, a senior Bank vice-president. Beavers then questioned Brennan, who claimed he was only "kidding." Beavers instructed Brennan that the conduct Holland complained of should cease.
 
 
 9
 On June 28 a meeting was held which was attended by, among others, Holland, Brennan, and Beavers. As a result of this meeting, all parties indicated that the problems had been resolved, and Holland expressed his satisfaction with the resolution of the matter.
 
 
 10
 Shortly thereafter, the co-worker who had warned Holland to be careful on account of his race was fired. Another fellow-employee told Holland that his days were numbered at the Bank and that Brennan would not forgive him for having gone over his head to Beavers. Holland, frightened by these events, submitted an application to the Marriott Corporation for part-time work. Holland advised Brennan of his application to Marriott, as was required by the Bank's personnel policy. Holland never obtained this employment because funding problems prevented Marriott from hiring part-time employees for several months during that period.
 
 
 11
 On July 20, 1989, Holland was injured on the job. The extent of his injury's effects was not immediately apparent.[2] On July 25, Brennan called Holland at home and told him that the Bank had "accepted his resignation." Holland replied to Brennan that he had never resigned. Brennan then sent Holland a letter conveying the same message he had communicated in the phone call. Holland responded in a letter dated August 1, 1989, denying that he had resigned and requesting a thorough explanation of Brennan's intentions regarding Holland's employment with the Bank. This letter was copied to the Bank's CEO Robert Zalokar, to Beavers, and to the Virginia Equal Employment Opportunity Commission (EEOC). Beavers, whom Zalokar designated to respond to Holland's letter, informed Holland by letter of August 7 that the Bank considered that Holland had resigned.
 
 II.
 
 12
 The Bank does not challenge the district court's judgment in favor of Holland's claims of racial harassment and discriminatory discharge under Title VII of the Civil Rights Act of 1964. This appeal primarily focusses on the district court's allegedly erroneous interpretation of Patterson v. McLean Credit Union, 491 U.S. 164 (1989), as allowing Holland's claim of retaliatory refusal to rehire to go to the jury under 42 U.S.C. Sec. 1981. We review the district court's conclusions of law concerning the scope of Section 1981 de novo.
 
 
 13
 Section 1981, enacted as part of the Civil Rights Act of 1866, provides as follows:
 
 
 14
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 15
 42 U.S.C.A. Sec. 1981 (1981). In Patterson the Supreme Court reaffirmed its holding in Runyon v. McCrary, 427 U.S. 160 (1976), that Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. Patterson, supra, 491 U.S. at 170.
 
 
 16
 On the facts presented in Patterson, however, the Court narrowed the coverage of Section 1981, holding that Section 1981 does not apply to conduct, such as the racial harassment alleged by Patterson, which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations. Id., 491 U.S. at 179. The Court found that Patterson's racial harassment claim concerned the terms and conditions of her employment and did not implicate the making or enforcing of an employment contract. Id., 491 U.S. at 171.
 
 
 17
 As to Holland's refusal to rehire claim, the district court reasoned that two separate contracts were involved: the contract terminated by Brennan's letter to Holland, and the subsequent contract the Bank refused to make with Holland for his rehire. The court thus found that this claim remained within the coverage of Section 1981, as long as there was evidence from which the jury could find (1) a refusal to make a new employment contract (2) that was motivated by racially discriminatory retaliation.
 
 
 18
 Our understanding of Patterson as seen in the light of the circumstances surrounding Holland's termination leads us to a different result. While we do not assert that Patterson bars all refusal to rehire claims from the reach of Section 1981, we conclude that on the facts of this case, the district court's decision to submit Holland's refusal to rehire claim to the jury under Section 1981 was reversible error.[3] Moreover, reprehensible as the Bank's conduct here may be, the jury's verdict for Holland on this claim must be reversed, for the evidence is insufficient to permit a reasonable jury to find that the Bank refused to enter into a new employment contract with Holland. Fed.R.Civ.P. 52(a); Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985).
 
 
 19
 There is no question that Holland's employment contract with the Bank was terminated--whether by the Bank or by Holland himself, if the Bank's resignation theory is accepted. The letters exchanged between Holland and the Bank regarding that termination, however, do not support a finding that a new contract to rehire Holland was proposed and rejected. Rather, both the phrasing of Holland's August 1 letter and its timing close on the heels of the Bank's notification of Holland's termination indicate that its purpose was not to request re-employment but to clarify Holland's understanding of the Bank's actions. In the letter, Holland asked only for "a thorough explanation of your [the Bank's] intentions regarding my employment with First Virginia Banks."
 
 
 20
 Even if Holland's letter could reasonably be construed as a request for re-employment which the Bank then refused, we think that the close timing of the letters to the termination prevents us from construing the letters as initiating a contract whose formation would be contemplated by Patterson. To find otherwise would permit discharged employees, whose discharge is rendered not actionable under Section 1981 by Patterson, to sidestep Patterson and obtain Section 1981 coverage by immediately requesting re-employment.
 
 III.
 
 21
 The Bank also alleges on appeal that the district court erroneously instructed the jury on the proper causation standard to be applied in Section 1981 cases, in that the court failed to tell the jury that a plaintiff under Section 1981 is required to demonstrate that discrimination was a "but for" cause of the adverse employment action at issue. McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 282 n. 10 (1976). The Bank claims that this omission constitutes prejudicial error, citing Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir.1985).
 
 
 22
 We find that the Bank did not adequately articulate to the district court its objection to the causation instruction, and that therefore the right to raise this issue on appeal was waived. Were we to rule on the matter, however, we would find dispositive the Supreme Court's recent statement in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). There the Court, in considering a Title VII gender discrimination claim, stated that the "but for" language of McDonald does not indicate that the plaintiff must show "but for" causation in order to prevail. Rather, the Court construed this language to mean only that, if the plaintiff does meet that standard, he will prevail. 490 U.S. at 240 n. 6. Thus, any error the district court committed in failing to instruct the jury concerning "but for" causation was harmless. The Bank further appeals the district court's award of punitive damages and its enhancement of the attorneys' fees awarded. Because we reverse the jury's verdict the punitive damage award is vacated and we need not discuss the matter here. We vacate the award of attorneys' fees and remand to the district court for further consideration.[4] The district court's submission of Holland's Section 1981 claim to the jury, and the subsequent jury verdict, are hereby
 
 
 23
 REVERSED.
 
 
 
 [1]
 Ambrosi testified that he would not have removed the sign even if it had said, "Bob Holland is a no good black son-of-a-bitch."
 
 
 [2]
 Eventually it became clear that the injury was more serious than first appeared. As a result Holland was unable to return to the type of work he had done at the Bank
 
 
 [3]
 Of the several federal courts which have considered the discriminatory refusal to rehire issue in light of Patterson, several have held that the discriminatory refusal to rehire an employee is precisely the sort of refusal to make a contract that the Supreme Court found to be actionable under Section 1981 in Patterson. Williams v. Avco Lycoming, 755 F.Supp. 47, 51 (D.Conn.1991); Tillman v. Beaver Express Service, Inc., 1991 WL 26936 at 2 (D.Kan.1991); Padilla v. United Air Lines, 716 F.Supp. 485, 490 (D.Colo.1989). Others, analogizing from the language in Patterson concerning promotions, have found that rehiring an employee into the same position from which he was discharged was not what the Court contemplated as a "new and distinct relation." Smith v. Continental Ins. Corp., 747 F.Supp. 275, 282 (D.N.J.1990); Carter v. O'Hare Hotel Investors, 736 F.Supp. 158, 160 (N.D.Ill.1989); Eklof v. Bramalea Ltd., 733 F.Supp. 935, 937 (E.D.Pa.1989)
 
 
 [4]
 We call to the district court's attention that the "exceptional result obtained" generally should not be used to provide an independent basis for increasing the attorneys' fee award. Blum v. Stenson, 465 U.S. 886, 897 (1984); see also Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1981) ("result obtained" factor is included among factors which comprise the lodestar figure). An enhancement of this type is proper only if supported by both specific evidence on the record and detailed findings. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley I), 478 U.S. 546, 565 (1986)