559 A.2d 917

Jeffrey CLAY and Mary Clay, Individually and as Husband and Wife, Appellees,

v.

ADVANCED COMPUTER APPLICATIONS, INC., Bjorn J. Gruenwald, Individually and as President of Advanced Computer Applications, Inc., and Richard Baus, Appellants.

Supreme Court of Pennsylvania.

Argued Dec. 8, 1988.

Decided June 5, 1989.

Robert C. Whitley, III, Doylestown, Lawrence S. Coburn, Philadelphia, for appellants.

Alfred J. Monte, Jr., Robert S. Hawkins, Debbie Rodman Sandler, Philadelphia, amicus curiae, for Sun Oil Co., Bell Telephone and ConRail.

Lee D. Rockafellow, Morrisville, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal by allowance from an *en banc* order of the Superior Court, 370 Pa.Super. 497, 536 A.2d 1375 (1988) which affirmed in part and reversed in part an order of the Court of Common Pleas of Bucks County which dismissed claims asserted by appellees, Jeffrey and Mary Clay, seeking damages for alleged wrongful discharges from employment with Advanced Computer Applications, Inc. The Superior Court reversed the trial court's ruling that subject matter jurisdiction was lacking with respect to a claim that appellees were terminated from employment under improper discriminatory circumstances.[1] The trial court had ruled that, because it was alleged that the firings were connected with sexual harassment and discrimination in the workplace, the Pennsylvania Human Relations Commission (hereinafter PHRC) had initial jurisdiction over the matter.

---

1. The Superior Court affirmed portions of the trial court's order dismissing additional claims of intentional infliction of emotional distress and breach of an implied contract of employment, but no appeal has been taken from these portions of the Superior Court's order.

The essence of appellees' allegation was that their at-will employment had been terminated, in November, 1984, because Mary Clay rebuffed sexual advances made by one of the employer's management level employees. Because appellees failed to seek redress for their grievances through the PHRC, the trial court held that they were barred from judicial recourse. We agree.

In reversing the trial court's action, the Superior Court held that the existence of administrative remedies available through the PHRC did not prevent appellees from seeking judicial remedies instead, based upon alleged common law rights. In so holding, it expressly overruled its recent decision in *Householder v. Kensington Manufacturing Co.*, 360 Pa.Super. 290, 520 A.2d 461 (1987), appeal denied, 516 Pa. 629, 532 A.2d 1137 (1987), wherein it was held that, in order to assert a claim for wrongful discharge from employment which is cognizable under the Pennsylvania Human Relations Act (hereinafter PHRA), 43 P.S. § 951 et seq., an aggrieved party must utilize administrative remedies available through the PHRC before asserting a cause of action in court. The overruling of *Householder* was also contrary to Commonwealth Court decisions requiring exhaustion of PHRC administrative remedies prior to seeking judicial recourse. See, e.g., *Carney v. Commonwealth, Pennsylvania Human Relations Commission*, 45 Pa. Commw.Ct. 10, 17–18, 404 A.2d 760, 764 (1979). We believe the *Householder* decision was correct, and that the Superior Court erred in declining to follow it.

■ As stated in *Householder*, 360 Pa.Super. at 294, 520 A.2d at 464, the PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination. It should be noted that, as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would

threaten clear mandates of public policy. E.g., *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (employee cannot be discharged for serving on a jury). Nevertheless, inasmuch as appellees failed to pursue their exclusive statutory remedy for sexual harassment and discrimination in the workplace, they are precluded from relief. This result is indicated by express provisions of the PHRA, as well as established judicial interpretations of legislative intent.

The PHRA provides that it is an unlawful practice for any employer to discharge from employment or otherwise discriminate against an employee on the basis of sex. 43 P.S. § 955(a). A right to a remedy for discrimination in employment is established by the PHRA, 43 P.S. § 953, where it is provided, "The opportunity for an individual to obtain employment for which he is qualified ... without discrimination because of ... sex ... is hereby recognized as and declared to be a civil right *which shall be enforceable as set forth in this act.*" (Emphasis added). Thus, the PHRA both bestows a right to be free from discrimination based on sex, and prescribes procedures whereby the right "shall" be vindicated. The use by the legislature of the word "shall," as opposed to "may," expresses an intent to make administrative procedures under the PHRA a mandatory rather than discretionary means of enforcing the right created thereby. Clearly, too, the right in question is of purely statutory origin, for, as discussed supra, common law rights to be free from termination of at-will employment are not generally recognized, and we have never held that at-will employment terminations arising from sex discrimination are actionable at common law. In short, the remedy that should have been invoked by appellees was the one provided by the PHRA.

Allowing a discharged employee to commence an action in the courts without first exhausting administrative remedies would be logically inconsistent with the legislature's having created the PHRC to function as an efficient mechanism for handling such disputes. In *Pennsylvania Human Rela-*

*tions Commission v. Alto–Reste Park Cemetery Association,* 453 Pa. 124, 133–34, 306 A.2d 881, 887 (1973), this Court described the intent of the legislature regarding the PHRC:

[T]he Legislature recognized that only an administrative agency with broad remedial powers, exercising particular expertise, could cope effectively with the pervasive problem of unlawful discrimination. Accordingly, the Legislature vested in the Commission, quite properly, maximum flexibility to remedy and hopefully eradicate the "evils" of discrimination....

We thus recognize that the expertise of the Commission in fashioning remedies is not to be lightly regarded.

The legislative intent that the PHRC would bring to bear particular expertise in handling discrimination cases was further noted in *Commonwealth, Pennsylvania Human Relations Commission v. Feeser,* 469 Pa. 173, 178, 364 A.2d 1324, 1326 (1976), where we stated, "The Legislature has chosen, in the PHRA, to charge an administrative agency with the jurisdiction initially to receive, investigate, conciliate, hear, and decide complaints alleging unlawful discrimination." (Footnote omitted). In *Feeser,* the inadvisability of having courts of common pleas decide discrimination cases was expressly noted, and this Court rejected an interpretation of the PHRA that would have allowed a scheme whereby the "court of common pleas, which has no experience handling PHRA complaints, would resolve the dispute, while PHRC, the agency created for this purpose by the Legislature, would be denied an opportunity to hear and decide the case." 469 Pa. at 179, 364 A.2d at 1327. We stressed that the "expertise" which the PHRC has and the courts of common pleas do not have in this area motivated the legislature to limit aggrieved parties from seeking remedies in the courts. *Id.* at n. 10. See also *Fye v. Central Transportation Inc.,* 487 Pa. 137, 142, 409 A.2d 2, 5 (1979) ("It is clear from the legislation that the General Assembly was of the view that the procedures provided by the

[PHRA] represented the most effective approach to the problem of discrimination.").

■ Thus, the statutory scheme would be frustrated if aggrieved employees were permitted to circumvent the PHRC by simply filing claims in court. This would result in the very sort of burdensome, inefficient, time consuming, and expensive litigation that the PHRC was designed to avert, and would substantially undermine the proper role of the PHRC. Certainly, by requiring initial utilization of administrative remedies, aggrieved parties are not deprived of their *ultimate* resort to the courts. It is provided in section 962(c) of the PHRA that the rights of a complainant thereunder shall not be foreclosed from being pursued in the courts, if, within one year after the filing of a complaint, the PHRC dismisses the complaint or fails to enter a conciliation agreement to which the complainant is a party. 43 P.S. § 962(c). The purpose for providing final, rather than initial, resort to the courts was described in *Lukus v. Westinghouse Electric Corp.*, 276 Pa.Super 232, 276, 419 A.2d 431, 455 (1980) (citation omitted):

> The legislative history of section 962(c) shows that the Legislature intended that the PHRC should have exclusive jurisdiction of a complaint alleging violations under the PHRA for a period of one year in order to conduct an investigation of the charges and, if possible, conciliate the matter. 1974 Pa.Legis.J. 6396–98. The reasons the Legislature chose thus to postpone a complainant's right to seek redress by an action in court are clear. The PHRC possesses a "particular expertise" in the area of unlawful discrimination not possessed by the courts. By requiring a complainant first to repair to the PHRC, the Legislature ensured maximum use of the PHRC's expertise, thereby minimizing the inefficient use of judicial resources (and its attendant expense and embarrassment of the parties). In other words, the rationale of the principle of exhaustion of administrative remedies, applicable to other areas of administrative law, is also applicable to actions brought under section 962(c) of the PHRA.

 Examination of the Superior Court's decision in the present case reveals that the provision allowing ultimate resort to the courts after administrative remedies have been exhausted, as well as other provisions of the PHRA discussed infra, were misconstrued as meaning that judicial recourse could be pursued without need for utilization of administrative processes. The provisions in question, 43 P.S. § 962(b)–(c), state the following:

(b) Except as provided in subsection (c), nothing contained in this act shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination because of race, color, religious creed, ancestry, age, sex, national origin or handicap or disability, but as to acts declared unlawful by section five of this act the *procedure herein provided shall, when invoked, be exclusive* and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If the complainant institutes any action based on such grievance without resorting to the procedure provided in this act, such complainant may not subsequently resort to the procedure herein.

· · · · ·

(c) In cases involving a claim of discrimination, *if a complainant invokes the procedures set forth in this act,* that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act. If the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from

engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employes, granting of back pay, or any other legal or equitable relief as the court deems appropriate.

(Emphasis added).

The cited provisions, which clearly contemplate that in certain cases aggrieved parties might not invoke PHRA procedures, were viewed by the Superior Court as affording parties an election of remedies, permitting them to proceed under the PHRA or under any other form of recourse, with the only restriction being that they cannot commence multiple actions seeking both administrative and judicial remedies. Parties initially electing the administrative route were, of course, viewed as being restrained from judicial recourse for a period of one year in accordance with subsection (c), but others were deemed free to bring tort actions alleging discrimination without need for filing a complaint with the PHRC. This result, Superior Court indicated, was compelled by certain language contained in our decision in *Fye v. Central Transportation Inc.,* supra. The language in question was the following:

The General Assembly, recognizing the invidiousness and pervasiveness of the practice of discrimination, attempted by the PHRA to create a procedure and an agency specially designed and equipped to attack this persisting problem and to provide relief to citizens who have been unjustly injured thereby. Although attempting to fashion a special remedy to meet this illusive and deceptive evil, the General Assembly did *not withdraw the other remedies that might be available* depending upon the nature of the injury sustained. The legislature recognizing that the effectiveness of the procedure it had created would be enhanced by the exclusivity of the provisions of the Act, and the undesirability of allowing the person aggrieved to commence several different actions for relief, *Daly v. School Dist. of Darby Tp.,* 434 Pa. 286, 252 A.2d 638 (1969), provided an election for the complaining person to opt for relief under the provisions

of PHRA or the right to seek redress by *other remedies that might be available.*

487 Pa. at 140–41, 409 A.2d at 4 (emphasis added) (footnote omitted).

Contrary to the Superior Court's interpretation of *Fye,* our reference to an aggrieved party's right to pursue "other remedies that might be available" did not infer that persons claiming to have been wrongfully terminated from at-will employment were given free rein to bring actions in court alleging tortious discrimination. See generally *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (3d Cir.1982). Rather, the "other remedies" to which we referred were essentially those existing under "provisions of any ... municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination ...," inasmuch as these were expressly saved by the PHRA from being repealed or superseded.[2] 43 P.S. § 962(b). Although the legislature chose not to foreclose an aggrieved party from electing these other possible remedies, there is no basis for belief that there was intended to be broad and unrestricted access to civil actions, outside of the PHRA, alleging discriminatory termination of at-will employment. The intended forum for addressing grievances of the sort presented in this case is the PHRC. Appellees failed to exercise the proper methods for addressing their grievances, and, thus, are foreclosed from pursuing judicial recourse.

Order of the Superior Court reversed in part.

McDERMOTT, J., did not participate in the consideration or decision of this case.

STOUT, Former J., did not participate in the decision of this case.

NIX, C.J., files a concurring opinion.

ZAPPALA, J., joins the majority opinion and files a concurring opinion which is joined by LARSEN, J.

**2.** It is to be noted that remedies for discrimination are also available under various federal statutes. See, e.g., Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.

NIX, Chief Justice, concurring.

My disagreement with the majority is a very narrow one, but is of significance. Although I agree with the result ultimately reached by the majority, I disagree with its reasoning. The premise upon which the majority proceeds appears to be that a common-law cause of action exists against an employer for termination of an at-will employment relationship where such a discharge would implicate a clear mandate of public policy. The majority further holds, however, that where the public policy implicated is the constitutional prohibition of gender-based bias, the exclusive remedy falls under the express provisions of the Pennsylvania Human Relations Act ("PHRA"). Because I do not believe that there is a common-law cause of action for wrongful discharge, in this instance, I believe that the PHRA is the sole remedy available.

## I.

The real issue in this case is whether or not the discharged employee has a common-law cause of action against the employer for wrongful discharge under the PHRA without first exhausting the administrative remedies provided by the PHRA. Nevertheless, it is first necessary to respond to the majority's discussion concerning the exclusivity of the PHRA. In its exploration of the exclusivity of the statutory remedy, the majority interprets the language of the PHRA to provide that an aggrieved party is precluded from bringing an action in the courts without first proceeding under the PHRA. In reaching this determination, the majority first relies upon section 962 of the PHRA which provides in pertinent part:

(b) Except as provided in subsection (c), nothing contained in this act shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination because of race, color, religious creed, ancestry, age, sex, national

origin or handicap or disability, but as to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If the complainant institutes any action based on such grievance without resorting to the procedure provided in this act, such complainant may not subsequently resort to the procedure herein....

(c) In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act. If the court finds that the respondent has engaged in or is engaging in such unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employes, granting of back pay, or any other legal or equitable relief as the court deems appropriate.

43 P.S. §§ 962(b)–(c).

Additionally, the majority relies upon this Court's decision in *Fye v. Central Transportation, Inc.*, 487 Pa. 137, 409 A.2d 2 (1979), wherein we addressed the question of whether a party's initial election to seek redress under the PHRA divested the jurisdiction of a court in equity to entertain a complaint subsequently filed by the party. In concluding that the PHRA necessarily precludes the commencement of a common-law cause of action before administrative remedies have been pursued, the majority misapprehends the

plain language of section 962(b)–(c), as well as the interpretation of such language by this Court in *Fye*. As the Superior Court correctly noted, the language in section 962 is not intended to foreclose a claimant's "right to choose at the outset between the courts or the Human Relations Commission" in those instances where there is a common-law cause of action. *Clay v. Advanced Computer Applications, Inc.*, 370 Pa.Super. 497, 506, 536 A.2d 1375, 1380 (1988). However, if a cognizable action is pursued before the courts, subsequent resort to the administrative procedure outlined in the statute is prohibited. 43 Pa.C.S. § 962(b). Likewise, if the administrative remedy is chosen, civil action is precluded for a period of one year during which the Commission has exclusive jurisdiction. 43 Pa. C.S. § 962(c). Only after the party elects his or her remedy does the path become exclusive.

## II.

Although there is a constitutional right to be free from discrimination based on gender, Pa. Const. Art. I, §§ 1 & 26. Pennsylvania does not recognize a common-law action by an employee for termination of an at-will employment relationship based on sex discrimination. In this Commonwealth, the sole vehicle to be used to protect that constitutional right is statutory. Citing *Geary v. United States Steel*, 456 Pa. 171, 319 A.2d 174 (1974), the Superior Court incorrectly suggested in its opinion that Pennsylvania recognizes a tort cause of action for wrongful discharge from an at-will employment relationship in two kinds of cases: (a) when the discharge contravenes some clearly articulable public policy; and, (b) when the discharge was motivated by a specific intent to harm the employee. *See Clay, supra,* 370 Pa.Superior Ct. at 504, n. 4, 536 A.2d at 1379, n. 4 (1988). Contrary to the Superior Court's view, this Court did not announce a cause of action for wrongful discharge in *Geary*. The language relied upon by the Superior Court in its analysis of *Geary* was gratuitous *dicta* and could not possibly have created a tort cause of action for wrongful discharge. Indeed, the language in *Geary* clearly states

that a cause of action for wrongful discharge in an at-will employment relationship does not exist. There we stated:

> The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long since been discredited. But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge.

*Geary* at 184, 319 A.2d at 180. (Footnote omitted.)

Recognizing that a wrongful discharge action would be inimical to the continued existence of at-will employment, I agree that the trial court properly dismissed appellees cause of action. Furthermore, since appellees did not elect to proceed under the PHRA, and there being no other basis for the cause of action, I concur in the mandate dismissing the appeal.

ZAPPALA, Justice, concurring.

While I join in the majority's opinion, I must depart from the part of its analysis which relies upon the distinction between statutory rights and common law rights. The majority states, "Clearly, too, the right in question is of purely statutory origin, for, as discussed supra, common law rights to be free from termination of at-will employment are not generally recognized, and we have never held that at-will employment terminations arising from sex discrimination are actionable at common law." (opinion at 90). To the extent that the majority's statement is intended to foreclose the possibility that such a common law right would be recognized in Pennsylvania, I must object.

The seminal case recognizing an exception to the at-will employment doctrine for the wrongful discharge of an employee is *Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974). In that case we held that where the plaintiff's complaint discloses a legitimate reason

for terminating an at-will employment relationship and no clear mandate of public policy has been violated, an at-will employee does not have a cause of action against his employer for wrongful discharge. We noted, however, that an employee's discharge may give rise to a cause of action where a recognized public policy is threatened.

The circumstances under which this Court will recognize a cause of action for wrongful discharge continue to evolve. Thus, while it is true that this Court has not held that termination of an at-will employee due to sex discrimination is actionable, it is because the question has not yet been presented to us. I, for one, would be loathe to intimate, as the majority does, that this Court would not acknowledge that the Commonwealth has recognized a public policy favoring the equal treatment of employees without regard to sex. No more clear statement of public policy exists than that of a constitutional amendment. The passage of the Pennsylvania Equal Rights Amendment, Article I, § 28 is the expression of public policy. I will not eliminate the possibility that our developing body of common law would encompass a cause of action for wrongful discharge arising out of sexual discrimination once that issue is before us.

LARSEN, J., joins in this concurring opinion.