**James J. KELLY, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.**

**Civ. A. No. 89–5808.**

United States District Court,
E.D. Pennsylvania.

Jan. 10, 1990.

Benjamin Lipman, Philadelphia, Pa., for plaintiff.

Dennis J. Morikawa, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

MEMORANDUM

NEWCOMER, District Judge.

This is a case involving the alleged wrongful firing of the plaintiff, James J. Kelly, by defendants, National Railroad Passenger Corporation ("Amtrak"), on the basis that Amtrak discriminated against the plaintiff because of his alleged disability or handicap, an "acute stress disorder, major depression and attendant alcohol and drug dependencies." Before me now is defendants' Motion to Dismiss Count III, alleged wrongful discharge and breach of contract, and Count IV, alleged intentional infliction of emotional distress. For the

rationale which follows I will grant both motions.

## I. *Background.*

This action arises out of the termination of plaintiff James J. Kelly by his former employer Amtrak. According to the Complaint, in October of 1984, Kelly sought medical assistance for an "acute stress disorder, major depression and attendant alcohol and drug dependencies." After two medical leaves of absence, he returned to work in January of 1986 and signed a statement pledging he would "follow the [treatment] program prescribed by his physician(s) and counselor" and "take part in any after care program prescribed by his physician(s) and/or counsel." Plaintiff alleges he was demoted upon his return and, thereafter, passed over for promotions to newly created positions in the Labor Relations Department, although he was the most qualified applicant.

Plaintiff alleges that he was later questioned by his supervisor about excessive use of Amtrak telephones for personal calls. He explains that the calls were being placed to members of his therapy and alcoholics anonymous group and that contact with those persons was a part of his prescribed after care program. The telephone calls by the plaintiff were continued until July of 1987, when he was asked to account for certain calls. Kelly insisted to his superiors that the calls were necessary for his recovery, but refused to provide Amtrak with any information by which to verify his contention. On July 21, 1987, Kelly was terminated for excessive personal use of Amtrak's telephones.

## II. *Rule 12(b)(6) Standard.*

Fed.R.Civ.P. 12(b)(6) instructs a court to dismiss an action for failure to state a cause of action only if it appears a certainty that no relief could be granted under any set of facts which could be proved. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Because granting such a motion results in a determination of the merits at such an early stage of the plaintiff's case,

the trial court "must take all well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665–66 (3d Cir.1988) (*quoting Estate of Baily by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985)).

## III. *Discussion.*

### A. Count III: Wrongful Discharge and Breach of Contract.

Count III of the Complaint states that the defendants' discharge of the plaintiff was in violation of the public policy of Pennsylvania. Defendants argue that the Pennsylvania Supreme Court's recent decision in *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917 (1989), dictates that plaintiff has failed to state a cause of action for the tort of wrongful discharge in this case.

The *Clay* Court held that "the PHRA [Pennsylvania Human Relations Act] provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination". *Id.,* 559 A.2d at 918. The Court cited with approval a previous Superior Court decision, wherein it was held that, "in order to assert a claim for wrongful discharge from employment which is cognizable under the [PHRA] ... an aggrieved party must utilize administrative remedies available through the PHRC [Pennsylvania Human Relations Commission] before asserting a cause of action in court." *Clay,* 559 A.2d at 918, citing *Householder v. Kensington Manufacturing Co.,* 360 Pa. Super. 290, 520 A.2d 461 (1987), appeal denied, 516 Pa. 629, 532 A.2d 1137 (1987). Plaintiff alleges he has fulfilled the PHRA's administrative prerequisites to a court action. However, the *Clay* Court also concluded, subsequent to reviewing the language of the PHRA and its legislative history, that "there is no basis for belief that there was intended to be broad and unrestricted access to civil actions, out-

side of the PHRA, alleging discriminatory termination of at-will employment."

■ Even viewing the allegations of the complaint in the light most favorable to the plaintiff, I find that Count III fails to state a claim for wrongful discharge. A cause of action for wrongful discharge may lie where such discharge violates a clear mandate of public policy. *See Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Plaintiff argues that "[o]ne need look no further than the Pennsylvania Drug and Alcohol Abuse Control Act ... to know that Kelly's drug and alcohol therapy was very much favored by the public policy of this Commonwealth." However, as the defendant correctly points out, a wrongful discharge claim based on a public policy against handicap discrimination is not recognized in Pennsylvania. *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918–19 (3d Cir.1982) (the narrow public policy exception announced in *Geary* applies only where no statutory remedy is available).

Plaintiff has also alleged, in Count III of his complaint, that defendant's discharge of plaintiff was a breach of contract. However, *Clay* noted that "as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." Under Pennsylvania law, a plaintiff alleging breach of an employment contract must rebut the presumption of employment at-will. At-will employees may be discharged at any time, for any reason, or for no reason at all. *Geary*, 456 Pa. at 174, 319 A.2d at 176. To overcome this presumption a plaintiff must plead and prove the existence of definite and specific contract terms concerning the length of employment or otherwise restricting the employer's right to terminate the employment relationship. *See Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 435 (3d Cir.1986); *Engstrom v. John Nuveen & Co.*, 668 F.Supp. 953, 975 (E.D.Pa.1987).

■ Plaintiff has merely alleged that defendant demanded, and he agreed, to follow the advice of his doctors and counselors. Plaintiff argues that the defendant made this therapy a condition of plaintiff's continued employment and that defendant is precluded from terminating him simply because he was making telephone calls to his therapy group. I must disagree. There is no allegation that the parties negotiated any agreement to restrict Amtrak's right to terminate plaintiff. Accordingly, the Court finds that plaintiff's claims of wrongful discharge and breach of contract do not qualify as exceptions to the general rule that there is no common law cause of action against an employer for termination of an at-will employment relationship. Plaintiff's claims for the tort of wrongful discharge and breach of contract must therefore be dismissed.

B. Count IV: Intentional Infliction of Emotional Distress.

■ Under Pennsylvania law, in order for a plaintiff to properly plead a cause of action for intentional infliction of emotional distress, the plaintiff must show that the challenged conduct is so "extreme and outrageous" such "as to go beyond all possible bounds of decency, and [is] to be regarded as atrocious, and utterly intolerable in a civilized community." *Jones v. Nissenbaum, Rudolph, & Seidner*, 244 Pa.Super. 377, 383, 368 A.2d 770, 773 (1976). In *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988), the Third Circuit held that "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for intentional infliction of emotional distress." *Id.* at 395. After careful consideration of the allegations of plaintiff's complaint, I do not find that the circumstances of plaintiff's dismissal as pleaded are sufficient to withstand defendant's motion to dismiss plaintiff's cause of action for intentional infliction of emotional distress. Accordingly, I shall, and hereby do, dismiss Count IV of plaintiff's complaint.