**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| KAREN HARRISON, | : | No. 51 MAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 365 EDA 2018 |
| | : | dated December 12, 2018 Affirming |
| v. | : | in Part and Vacating in Part the |
| | : | Order of the Lehigh County Court of |
| | : | Common Pleas, Civil Division, at |
| HEALTH NETWORK LABORATORIES | : | No. 2016-C-1469 dated December |
| LIMITED PARTNERSHIPS, AND LEHIGH | : | 19, 2017 and Remanding. |
| VALLEY HEALTH NETWORK, INC., | : | |
| | : | ARGUED: November 19, 2019 |
| Appellants | : | |

**OPINION**

**JUSTICE DOUGHERTY**                                 **DECIDED: June 16, 2020**

We granted discretionary review to consider whether the Superior Court erred in holding the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§951-963, does not preclude a wrongfully terminated employee from filing a court action for retaliatory discharge under the Pennsylvania Whistleblower Law (Whistleblower Law), 43 P.S. §§1421-1428, when the plaintiff reported discriminatory conduct made unlawful by the PHRA, but was not herself the subject of the underlying discrimination. After careful review, we conclude the Superior Court did not err in so holding, and we therefore affirm.

**I. Background**

Appellee Karen Harrison (Harrison) held an administrative position for appellants, Health Network Laboratories Limited Partnerships and Lehigh Valley Health Network, Inc. (collectively Health Network), or one of their acquired organizations, for approximately

eighteen years.[1] Amended Complaint at ¶¶6-9. From 2012 until her discharge, Harrison's title was "Manager, Quality," a position which, according to Harrison, required her to meet with coworkers to ensure they were performing in a satisfactory and safe working environment. *Id.* at ¶¶10-11. In March of 2015, Harrison received a complaint from a Health Network employee expressing concerns about allegedly abusive, discriminatory, and harassing conduct by an IT department supervisor, which was known to and went unchecked by the supervisor's immediate superior. *Id.* at ¶¶13-14. Harrison initially reported the concerns to Health Network's Chief Operating Officer/Chief Compliance Officer, without identifying the complainant or supervisors by name, and requested the appointment of an ombudsman to address the concerns. *Id.* at ¶¶18-19. No ombudsman was appointed, and the concerns went unaddressed. *Id.* at ¶¶20-21. In October of 2015, the complainant employee resigned, providing a letter which memorialized her experience with the IT supervisor's conduct and identified the offending supervisor by name; she forwarded the letter to Harrison as well as other Health Network employees. *Id.* at ¶¶21, 23. Harrison shared the letter with her chain of command on October 19, 2015, but no corrective action was taken with the IT supervisor. *Id.* at ¶¶24-25. On November 19, 2015, Health Network terminated Harrison. *Id.* at ¶26. Health Network's stated reason for firing Harrison was for use of foul language at an after-hours banquet; however, Harrison averred this explanation was pretextual in light of her exemplary personnel record, and her firing was instead retaliation for her attempts to "intervene in and deter the illegal, threatening, abusive and discriminatory conduct" of the IT supervisor. *Id.* at ¶¶28-30.

---

[1] Harrison worked for Muhlenberg Hospital from 1992 until October 1, 1998, at which time the hospital merged with Lehigh Valley Health Network, Inc., the general partner of Health Network Laboratories Limited Partnerships. Amended Complaint at ¶¶6-9.

Harrison filed an action in the court of common pleas alleging a single count of retaliation pursuant to Pennsylvania's Whistleblower Law.[2] The Whistleblower Law provides a civil remedy for employees who are discharged or otherwise retaliated against for making a good faith report of, *inter alia*, wrongdoing by a publicly-funded employer.[3] *See* 43 P.S. §§1423-24. The Whistleblower Law includes violations of federal or state statutes or regulations "which [are] not of a merely technical or minimal nature" as types of reported wrongdoing that support a claim of actionable retaliation. *Id.* at §1422. Specifically, Harrison alleged she was fired as retaliation for reporting wrongdoing she witnessed, *i.e.*, discriminatory and abusive conduct by one co-employee against another, which constituted violations of the PHRA.[4] Amended Complaint at ¶¶30, 37-38. Health Network filed preliminary objections raising, in pertinent part, legal insufficiency of the complaint to state a claim upon which relief may be granted, *see* Pa.R.C.P. 1028(a)(4), and seeking dismissal of the case with prejudice. Preliminary Objections to Amended Complaint at ¶¶36, 63. According to Health Network, the PHRA is the exclusive state law remedy for unlawful workplace discrimination, and contains its own specific provision

---

[2] Harrison's initial complaint additionally alleged the supervisor's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2000e-17, which caused the matter's removal to federal district court. *Harrison v. Health Network Labs. Ltd. P'ships*, No. 16-3530, unpublished memorandum at 1 (E.D. Pa. filed May 18, 2017). Upon Harrison's amendment of the complaint to remove reference to the embedded federal claim, the federal court removed the case back to the court of common pleas. *Id.* at 3.

[3] Harrison avers, and Health Network does not dispute, as a recipient of Medicare and other forms of public assistance payments, Health Network is a "public body" "which is funded in any amount by or through Commonwealth or political subdivision" as defined by the Whistleblower Law. Amended Complaint at ¶¶33-34; *see also* 43 P.S. §1422 (defining "public body").

[4] Relevant to this appeal, the PHRA prohibits employers who fall within the act from discriminating against their employees on the basis of race, color, religious creed, ancestry, age, sex, national origin, or disability, and from discriminating against individuals who oppose practices forbidden by the PHRA. *See* 43 P.S. §§955(a), (d).

prohibiting retaliation for opposing practices forbidden by the PHRA; Health Network therefore argued Harrison could only pursue her retaliation claim under the PHRA, which requires claimants to exhaust their administrative remedies first — *i.e.*, file an administrative charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) and submit to its investigation, conciliation, and adjudication procedures — before advancing a claim in court. *Id.* at ¶¶43-51, *citing*, *inter alia*, 43 P.S. §955(d) (PHRA provision prohibiting discrimination by employer against "any individual because such individual has opposed any practice forbidden by this act"), *Weaver v. Harpster*, 975 A.2d 555, 567 n. 10 (Pa. 2009) ("[T]he legislature has made the PHRA the exclusive state law remedy for unlawful discrimination, preempting the advancement of common law claims for wrongful discharge based on claims of discrimination.").

The trial court sustained Health Network's preliminary objections, determining Harrison was required to file her complaint with the PHRC and exhaust all administrative remedies before seeking redress under the PHRA in court. *See* Trial Court Opinion, 2/9/2018, at 3. The court further explained it viewed proceeding on the Whistleblower Law claim as thwarting the intent of the PHRA because it would permit Harrison to skip the mandatory PHRC investigation into her retaliation claim, and would deny Health Network the opportunity to reach a conciliation agreement before the PHRC. *Id.* at 4. In dismissing Harrison's complaint, the court concluded Health Network's alleged retaliation against Harrison for her opposition to illegal workplace discrimination fell within the exclusive jurisdiction of the PHRA, thus she failed to state a claim upon which relief could be granted under the Whistleblower Law and failed to exhaust administrative remedies under the PHRA. *Id.*

Harrison appealed, and a three-judge panel of the Superior Court reversed the trial court's decision.[5] *See Harrison v. Health Network Labs. Ltd. P'ships*, No. 365 EDA 2018, unpublished memorandum (Pa. Super. filed December 12, 2018). Reasoning that the trial court's analysis appeared to conflate a claim for violation of the PHRA (which requires pursuit of administrative remedies) with a Whistleblower Law claim (which does not), the panel concluded Harrison was not required to invoke the PHRA's administrative remedies in order to pursue a retaliation claim where the alleged violation of the PHRA was the underlying wrongdoing, rather than a discriminatory act perpetrated against Harrison. *Id.* at 8-9. The panel further held that, because Harrison had sufficiently pleaded allegations to establish a cognizable claim under the Whistleblower Law, *i.e.*, she made a good faith report of wrongdoing by her employer, the trial court erred when it sustained Health Network's preliminary objections. *Id.* at 9-10.

Health Network sought allowance of appeal, and we granted discretionary review of the following issue:

> Whether the Pennsylvania Human Relations Act ("PHRA"), including its requirement for exhaustion of remedial administrative procedures, provides the exclusive remedy for retaliation claims ostensibly brought under the Pennsylvania Whistleblower Law ("Whistleblower Law"), where the underlying basis for a Whistleblower Law retaliation claim is discrimination deemed to be unlawful under the PHRA.

*Harrison v. Health Network Labs. Ltd. P'ships*, 216 A.3d 219 (Pa. 2019) (*per curiam*).

Where the appeal arises from an order sustaining preliminary objections due to legal

---

[5] The Superior Court viewed Harrison's complaint as including a claim under the Whistleblower Law only; however, the panel acknowledged the complaint might possibly be read to include an insufficiently pleaded PHRA claim, and affirmed the trial court's dismissal of that claim. *Harrison v. Health Network Labs. Ltd. P'ships,* No. 365 EDA 2018, unpublished memorandum at 2, 9 (Pa. Super. filed December 12, 2018). That part of the Superior Court's decision is not before us in this appeal.

insufficiency of the complaint, our well-settled standard of review is *de novo*. *Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 908 (Pa. 2019). For the purpose of evaluating the legal sufficiency of challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. *Id.* We must determine whether, on the facts averred, the law says with certainty that no recovery is possible; where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Id.* at 909.

## II. Arguments

Health Network recognizes the PHRA prohibits employers who fall within the act from discriminating against their employees because of an employee's race, color, religious creed, ancestry, age, sex, national origin, or disability. *See* 43 P.S. §§954(a)-(b) (defining employer as, *inter alia*, a partnership or corporation "employing four or more persons within the Commonwealth"), 955(a) (describing unlawful discriminatory conduct). Health Network emphasizes, however, that the PHRA also prohibits covered employers from discriminating against any employee because the employee has opposed any practice made unlawful by the statute. *See* 43 P.S. §955(d) ("It shall be an unlawful discriminatory practice" for any employer "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act . . . ."). Health Network argues the PHRA jurisprudence demonstrates the legislature's intent was for the PHRA to be the exclusive state law remedy for cases involving discrimination. In support of its claim, Health Network relies on *Clay v. Advanced Comp. Applications, Inc.*,

559 A.2d 917 (Pa. 1989), and *Weaver*, as well as several federal district and circuit court cases.

Citing *Clay*, in which this Court held the PHRA's statutory remedy for discrimination claims precludes common law tort actions for wrongful discharge based upon discrimination, Health Network asserts the administrative procedures of the PHRA are the mandatory means for enforcing the right the PHRA creates. Appellant's Brief at 15, *citing Clay*, 559 A.2d at 919 (PHRA "bestows a right to be free from discrimination . . . and prescribes procedures whereby the right 'shall' be vindicated."). The Court in *Clay* recognized the expertise and broad remedial powers of the PHRC, which the legislature provided with the jurisdiction to receive, investigate, conciliate, hear, and decide complaints alleging unlawful discrimination, and determined that allowing a discharged employee to proceed with a common law tort action in court without first exhausting administrative remedies would frustrate the statutory scheme of the PHRA, as well as result in the inefficiencies and expense of litigation that the scheme was designed to avert. *Id.* at 16, *citing Clay*, 559 A.2d at 920. Health Network indicates this Court confirmed the exclusivity of the PHRA to remedy unlawful workplace discrimination twenty years later in *Weaver* wherein, according to Health Network, the Court considered whether the PHRA precludes plaintiffs from bringing employment discrimination claims based upon constitutional rights, and determined that the Equal Rights Amendment did not provide a public policy exception to at-will employment such that an employer not otherwise subject to the PHRA could face a common law action for sexual discrimination. *Id.* at 16-17, *citing Weaver*, 975 A.2d at 572. According to Health Network, *Weaver* additionally underscored the PHRC's exclusive authority to remedy discrimination claims due to its administrative

structure and particularized expertise and noted, "the legislature has made the PHRA the exclusive state law remedy for unlawful discrimination, preempting the advancement of common law claims for wrongful discharge based on claims of discrimination." *See Weaver*, 975 A.2d at 565, 567 n.10.

Health Network also points to various federal decisions rejecting plaintiffs' attempts to raise discrimination claims under laws other than the PHRA or its federal counterpart, Title VII, 42 U.S.C. §§2000e - 2000e-17. Appellant's Brief at 19-22, *citing, e.g., Mazuka v. Amazon.com*, 730 F. App'x 117, 119-20 (3d Cir. 2018) (PHRA provides exclusive remedy under Pennsylvania law for workplace discrimination and precludes common law fraudulent misrepresentation claim based upon employer's failure to accommodate employee's disability); *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (Title VII provides comprehensive statutory scheme for enforcing racial discrimination and harassment claims; such statutory claims cannot be brought under 42 U.S.C. §1983); *Hayburn v. City of Philadelphia*, 2012 WL 3238344 (E.D. Pa. Aug 7, 2012) (claim for retaliation in violation of Title VII and PHRA could not be brought under First Amendment's Speech and Petition Clauses); *Equal Employment Opportunity Comm'n v. Dan Lepore & Sons Co.*, 2004 WL 240315 (E.D. Pa. Jan. 29, 2004) (claims for sex discrimination and harassment could not be brought under Sherman Act and Clayton Act).

Health Network thus argues, because Harrison claims she was fired for opposing activity made unlawful by the PHRA — which is the basis of a retaliation claim under PHRA Subsection 955(d) — and the PHRA is the exclusive state law remedy for unlawful

discrimination, the PHRA precludes her claim under the Whistleblower Law, and was properly dismissed by the trial court. *Id.* at 23.

Harrison, in response, recognizes both the PHRA and the Whistleblower Law prohibit an employer from taking adverse action against an employee in response to the employee's report of conduct made unlawful by statute: the PHRA prohibits retaliation for reporting violation of the PHRA, *see* 43 P.S. §955(d), while the Whistleblower Law prohibits retaliation for reporting violation of any federal or state statute, *see* 43 P.S. §§1422-23. Harrison asserts, in enacting the Whistleblower Law thirty years after the PHRA, the legislature created the whistleblower protection with appreciation for the PHRA, and yet did not limit its broad definition of "wrongdoing" to exclude violations of the PHRA. *See* Appellee's Brief at 5; 43 P.S. §1422 (defining "wrongdoing" as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer").

Further, according to Harrison, the statutes do not conflict in a manner that would prevent claims of retaliation for reporting PHRA violations from proceeding under the later-enacted Whistleblower Law. Rather, Harrison asserts, pursuant to Subsection 962(b) of the PHRA, that act allows for an election of remedies between those available under the PHRA, or those available under any other applicable law, such as the Whistleblower Law. *Id.* at 7-8, 10-11, *citing* 43 P.S. §962(b). Harrison observes that Subsection 962(b) of the PHRA provides:

> **[N]othing contained in this act shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination** because of race,

color, familial status, religious creed, ancestry, age, sex, national origin or handicap or disability, but as to acts declared unlawful by section five of this act [relating to unlawful discriminatory practices] **the procedure herein provided shall, when invoked, be exclusive** and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. **If the complainant institutes any action based on such grievance without resorting to the procedure provided in this act, such complainant may not subsequently resort to the procedure herein.**

43 P.S. §962(b) (emphasis added). Harrison does not dispute that *Clay, Weaver*, and the federal cases cited by Health Network correctly held the PHRA precluded common law claims for discriminatory wrongful discharge; however, she asserts, where another legislative pronouncement provides a remedy the PHRA also provides, a complainant may proceed under one or the other. Here, she chose to proceed solely under the Whistleblower Law. Harrison further contends the PHRA does not control in unique instances such as hers, where plaintiffs are "not themselves the victims of discrimination based on some invidious or immutable characteristic, but [they are the employees] who report that others have suffered discrimination." *Id.* at 13. Harrison asserts the broad protection of the Whistleblower Law covers this limited group of plausible claimants.

### III. Discussion

The Pennsylvania Whistleblower Law protects employees who come forth with good faith reports of wrongdoing by publicly-funded employers; it does so by prohibiting retaliatory conduct from the employer, and by providing a civil remedy for employees when employers violate the law's provisions. *Bailets v. Pennsylvania Turnpike*, 181 A.3d 324, 333 (Pa. 2018) (Whistleblower Law protects employees fired in retaliation for exposing wrongdoing by public employers and private employers that receive public funds); 43 P.S. §§1423(a) (prohibiting discharge or other retaliation as a result of employee's good faith report of wrongdoing or waste), 1424 (permitting remedies in the

form of injunctive relief or damages). Section 1423(a) of the Whistleblower Law states the statutory protection upon which Harrison relies, which provides, in pertinent part:

> **(a) Persons not to be discharged.—**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee . . . makes a good faith report . . . to the employer or appropriate authority [of] an instance of wrongdoing or waste[.]

43 P.S. §1423(a). "Wrongdoing" is defined in the Whistleblower Law as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation [*inter alia*]." 43 P.S. §1422. Section 1423(b) of the Whistleblower Law additionally prohibits such retaliatory conduct against an employee who "is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action." 43 P.S. §1423(b). Section 1424(a) provides "[a] person who alleges a violation of [the Whistleblower Law] may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both[.]" 43 P.S. §1424(a). We have previously determined the Whistleblower Law's provisions must be liberally construed to effect their salutary remedial object, *i.e.*, the protection of whistleblowers. *Bailets*, 181 A.3d at 333; *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1203 (Pa. 2001).

While the Whistleblower Law broadly prohibits retaliation for reporting violation of any federal or state statute (among other things), the PHRA's prohibitions are more specific, targeted squarely on practices that discriminate on the basis of an individual's status as a member of a protected class — *i.e.*, based on their race, color, religious creed, ancestry, age, sex, national origin, or non-job-related handicap or disability — by making it unlawful for any employer to discharge from employment or otherwise discriminate

against an employee on the basis of their protected class status. 43 P.S. §§952, 953, 955(a). The PHRA also prohibits, among other unlawful discriminatory practices, retaliation; specifically, Subsection 955(d) of the PHRA makes it unlawful "[f]or any . . . employer . . . to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 P.S. §955(d).

Moreover, in addition to bestowing upon individuals the right to be free from protected-class-based discrimination by an employer, the PHRA also prescribes the mandatory procedures whereby that right shall be vindicated when invoked. *Clay*, 559 A.2d at 919, *citing* 43 P.S. §953 ("The opportunity for an individual to obtain employment for which he is qualified . . . without discrimination because of [race, color, familial status, religious creed, ancestry, handicap or disability, age,] sex[, or national origin *inter alia*] is hereby recognized as and declared to be a civil right **which shall be enforceable as set forth in this act**.") (emphasis in *Clay*); *see also* 43 P.S. §962(b) ("the procedure herein provided shall, when invoked, be exclusive"). The *Clay* Court held a plaintiff could not bring a common law action for wrongful discharge from employment based on an allegation of sexual discrimination, but was instead required to bring such a claim pursuant to the PHRA and abide by its mandatory procedures, *i.e.*, the exhaustion of administrative remedies via the initial submission of the claim to the PHRC for its investigation, review, attempt to conciliate, and decision on the matter, before seeking relief from the courts. *Id.* at 919; *see also* 43 P.S. §962(c). In so holding, the Court preliminarily noted that, except in the most limited of circumstances, there is no common

law cause of action against an employer for termination of an at-will employment relationship; aside from the rare and narrow instances where discharges of at-will employees would threaten clear mandates of public policy, only the PHRA provided a statutory remedy for sexual harassment and discrimination in the workplace. *Id*.; *see also Weaver*, 975 A.2d 555 at 563 (reaffirming there is no common law cause of action against employer for termination of at-will employment relationship absent "very narrow circumstances" in which clear mandates of public policy are threatened). The Court recognized the value of the PHRC's particular expertise and broad remedial powers in handling discrimination cases, and concluded the PHRA would be frustrated if aggrieved employees were permitted to circumvent its statutory scheme aimed at preventing the expense and inefficiencies of litigation by filing common law claims in court. *Id.* at 919-920.

Notably, however, the *Clay* Court also discussed Subsection 962(b) of the PHRA, which expressly states "**nothing contained in this act shall be deemed to repeal or supersede any of the provisions** of any existing or hereafter adopted municipal ordinance, municipal charter or **of any law of this Commonwealth** relating to discrimination because of race, color, familial status, religious creed, ancestry, age, sex, national origin or handicap or disability, but as to acts declared unlawful by section five of this act the procedure herein provided shall, **when invoked**, be exclusive . . . ." *Id.* at 920, *quoting* 43 P.S. §962(b) (emphasis added). The Court explained the provision clearly contemplates that, in certain cases, aggrieved parties might not invoke the PHRA procedures. *Id.* at 921. For those situations, stated the Court, the legislature chose not to foreclose the election of other possible remedies existing under a "municipal ordinance,

municipal charter or of any law of this Commonwealth relating to discrimination[.]" *Id. See also Fye v. Central Transp. Inc.*, 409 A.2d 2, 4 (Pa. 1979) ("The General Assembly . . . attempted by the PHRA to create a procedure and an agency specially designed and equipped to attack this [practice of discrimination] and to provide relief to citizens who have been unjustly injured thereby. Although attempting to fashion a special remedy to meet this illusive and deceptive evil, the General Assembly did not withdraw the other remedies that might be available depending upon the nature of the injury sustained."). Thus, where an aggrieved party chooses to pursue a remedial action under the PHRA, he or she is bound exclusively to the PHRA's procedures, including the exhaustion of administrative remedies, and bound to the result; however, an aggrieved party may instead elect to pursue a remedy that exists under other municipal laws or laws of the Commonwealth, and, by instituting such an alternative action, will then be precluded from resorting to the PHRA.

Here, Health Network claims because Harrison alleged retaliatory discharge for reporting conduct made unlawful by the PHRA, she was relegated to bring her claim under Subsection 955(d) of the PHRA and submit to the PHRA's administrative procedures. We disagree. Although there are obvious benefits to encouraging retaliation claims based on reports of conduct in violation of the PHRA to proceed under the PHRA before a specialized body endowed by an intricate statutory scheme with broad investigatory and remedial powers, the plain language of the statute itself makes clear that an aggrieved party is not mandated to invoke the PHRA's procedures when other laws **provide a**

**cognizable remedy** based on the harm alleged.[6] *See* 43 P.S. §962(b) (PHRA procedures mandatory and exclusive when invoked as to acts declared unlawful by PHRA; other laws not superseded).

In this regard, the cases relied upon by Health Network are distinguishable. As explained *supra*, *Clay* emphasized there are no common law tort remedies for wrongful discharge based on discrimination made unlawful by the PHRA; furthermore, the *Clay* Court viewed the PHRA's enforcement provisions as mandatory for those claimants seeking to vindicate their own civil rights, because only the PHRA provides a state law remedy to enforce an individual's civil right to be free from workplace discrimination. *Clay*, 559 A.2d at 919, 922; 43 P.S. §953. However, *Clay* is inapposite here, where Harrison does not attempt to pursue a common law tort action, nor does she invoke a right to be free from discrimination based upon her own protected class status, but rather seeks to enforce her right under the Whistleblower Law to be free from retaliation, where her report of the violation of another individual's civil rights serves as the underlying wrongdoing supporting her claim.

Additionally, although *Weaver* reinforced the preclusion of common law tort claims based on certain discrimination covered by the PHRA, it did not, as Health Network

---

[6] The dissent suggests our reading of Subsection 962(b) will allow discrimination claims to proceed incongruously under other laws that are not intended to encompass them, but we emphasize such claims must, in the first instance, be realizable under the terms of those other laws, and not be "shoehorned" into them. *See* Dissenting Opinion, slip op. at 4. Furthermore, as explained *infra*, our holding is not so broad as implied by the dissent; while we do not foreclose upon other possible elections of remedies relating to conduct made unlawful by both the PHRA and another law of the Commonwealth, we address herein only the interplay of the PHRA and the Whistleblower Law, and the narrow subset of claims based on alleged PHRA-defined discriminatory conduct reported by — but not necessarily suffered by — the claimant.

contends, directly consider whether the PHRA precluded plaintiffs from bringing different types of employment discrimination claims based upon constitutional rights. *See* Appellant's Brief at 16. Rather, *Weaver* addressed, more narrowly, whether the policies underlying either the PHRA or the Pennsylvania Equal Rights Amendment provided exception to the at-will employment doctrine when the PHRA would not otherwise apply, and the Court concluded that neither law provided such an exception. *See Weaver*, 975 A.2d at 555, 572. Indeed, Subsection 962(b) expressly supports the principle that a cognizable constitutional claim based on unlawful discriminatory conduct may proceed notwithstanding its viability under the PHRA. 43 P.S. §962(b) (other laws of the Commonwealth not superseded by the PHRA); *Daly v. School Dist. of Darby Twp.* 252 A.2d 638, 640 (Pa. 1969) ("[T]he exclusive remedy provision [of Subsection 962(b) of the PHRA] aims at preventing a person aggrieved by the violation of the act from commencing several different actions for relief. It does not bar another party from starting an action based on a claim that relief granted under the act is unconstitutional as to him."); *see also, e.g.*, *Imboden v. Chowns Communications*, 182 F.Supp.2d 453, 458 (E.D.Pa. 2002) (PHRA preempts common law remedies for discrimination, but not state constitutional claims).

Similarly, the federal cases relied upon by Health Network are unpersuasive, as they relate only to cases where the complainants asserted individual rights based on their own protected class status, and further describe cases in which: the PHRA precluded common law tort claims, *see, e.g.*, *Mazuka*, 730 F. App'x at 119-20 (disability discrimination claim could not be recast as a common law fraudulent misrepresentation claim); the court interpreted solely federal statutory schemes, *see, e.g.*, *Williams,* 870

F.3d at 299 (Title VII claim did not establish liability damages pursuant to 42 U.S.C. §1983); or the complainant's factual circumstances surrounding the alleged discrimination could not support a viable cause of action under the other laws asserted, *see, e.g.*, *Hayburn*, 2012 WL 3238344 at \*4 (plaintiff did not establish elements of First Amendment claim); *Dan Lepore & Sons Co.*, 2004 WL 240315 at \*2 (antitrust statutes do not provide a remedy for gender bias claims).

In contrast, Harrison asserted a cognizable claim under a law of the Commonwealth, the Whistleblower Law, alleging a violation of the PHRA. Nothing in the PHRA makes its provisions mandatory for the pursuit of such a claim. Certainly, the later-enacted Whistleblower Law's provision prohibiting retaliatory conduct for an employee's participation in investigations, hearings, or inquiries held by "an appropriate authority" demonstrates the legislature anticipated some overlap between the Whistleblower Law and the administrative procedures for investigating and remedying violations of other statutes or regulations, such as those pronounced by the PHRA. *See* 43 P.S. §1423(b) (prohibiting retaliatory conduct against employee who participates in inquiry by appropriate authority). An employee alleging a Whistleblower Law violation is required to show "prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." 43 P.S. §1424(b). As the Superior Court determined, Harrison has alleged such a showing; thus, her complaint establishes a *prima facie* case for retaliatory termination under the Whistleblower Law, upon which relief is possible.

## IV. Conclusion

Accordingly, we hold plaintiffs who are not themselves the victims of discrimination based on their own race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, or national origin, but who report discriminatory conduct made unlawful by the PHRA, may pursue a claim under the Whistleblower Law notwithstanding the viability of a claim under the PHRA for the same harm. The Superior Court correctly determined the trial court erred by sustaining Health Network's preliminary objections and dismissing Harrison's complaint.

Order affirmed.

Chief Justice Saylor and Justices Baer and Todd join the opinion.

Chief Justice Saylor files a concurring opinion in which Justice Mundy joins. Justice Wecht joins the substance of Chief Justice Saylor's concurrence but does not join the majority opinion.

Justice Wecht files a concurring opinion.

Justice Donohue files a dissenting opinion.