**[J-98-2019][M.O. - Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| KAREN HARRISON, | : | No. 51 MAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 365 EDA 2018 dated |
| | : | 12/12/18 affirming in part and vacating |
| v. | : | in part the order of the Lehigh County |
| | : | Court of Common Pleas, Civil Division, |
| | : | at No. 2016-C-1469 dated 12/19/17 and |
| HEALTH NETWORK LABORATORIES | : | remanding |
| LIMITED PARTNERSHIPS, AND LEHIGH | : | |
| VALLEY HEALTH NETWORK, INC., | : | |
| | : | |
| Appellants | : | ARGUED:  November 19, 2019 |

**CONCURRING OPINION**

**CHIEF JUSTICE SAYLOR**                                    **DECIDED:  June 16, 2020**

I join the majority opinion and write only to clarify that I find no material distinction between the forms of discrimination discussed in Section 3 of the PHRA, *id.* §953, and retaliation claims.  In this regard, I simply don't believe that the Legislature intended for exclusivity to be determined according to Section 3's depiction of the "[r]ight to freedom from discrimination in employment, housing and public accommodation."  *Id.*  Rather, to the degree that the PHRA's remedies are meant to be exclusive, I would look to Section 12, which is entitled, "[c]onstruction and *exclusiveness* of remedy."  *Id.* §962(b) (emphasis added).

Unfortunately, the Court in *Clay v. Advanced Computer Applications*, 552 Pa. 86, 559 A.2d 917 (1989), derived an exclusivity requirement from Section 3, because that provision both declares a right to be free from specified forms of discrimination and

prescribes that such right "shall be enforceable as set forth in this act." 43 P.S. §953. The Court then translated the word "enforceable" into "vindicated," and thus concluded that the Legislature actually meant that rights arising under Section 3 must be enforced exclusively through the enactment. *See Clay*, 522 Pa. at 90, 559 A.2d at 919. The word that the General Assembly actually employed, however -- enforceable -- is distinct from "enforced," and it simply does not carry the same connotation of exclusivity.

To the extent that one must rely on Section 953's "shall be enforceable" language as the source of exclusivity, this gives rise to an inconsistency, given that Section 5 delineates a broader list of unlawful discriminatory practices, which includes retaliation. *See* 43 P.S. §955. The question then becomes whether the Legislature intended exclusivity to apply in the first instance only to the forms of discrimination set forth in Section 3.

It should be noted, however, that there was no need for the *Clay* Court to reinterpret the word "enforceable" to support a view that the PHRA is generally exclusive in the first instance. Rather, this Court recognizes a general presumption that statutory remedies are exclusive, unless the Legislature explicitly reveals a contrary intention. *See, e.g., White v. Conestoga Tile Ins. Co.*, 617 Pa. 498, 519, 53 A.3d 720, 733 (2012) (citations omitted). Accordingly, from my point of view, the PHRA's remedies for unlawful discriminatory practices under Section 5 are just as presumptively exclusive as its remedies for violations of the civil rights established under Section 3. And the sole determinant of actual exclusivity should be the provision in which the Legislature sketched out the boundaries of its limited, contrary intentions, *i.e.*, Section 12.

Consistent with the above reasoning, I believe that the General Assembly -- in Section 12 -- sufficiently conveyed its design that an aggrieved person should have an

election of remedies relative to any of the unlawful discriminatory practices set forth in Section 5. In this regard, Section 12 specifically refers to those practices, *see* 43 P.S. §962(b) ("as to *acts declared unlawful in section five* of this act the procedure herein, *when invoked*, [shall] be exclusive" (emphasis added)), and bars recourse to PHRA remedies, "[i]f the complainant institutes any action *based upon such grievance*[, *i.e.*, a grievance arising under Section 5,] without resorting to the procedure provided in this act." *Id.*(emphasis added). Manifestly, I believe, this language conveys the Legislature's intention to permit recourse under other laws of the Commonwealth, relative to claims of unlawful discrimination that could be raised under Section 5.

Certainly, the statute could be clearer, particularly given Section 12(b)'s previous reference to Section-3 rights in connection with the preservation of other anti-discrimination laws. *See* 43 P.S. §962(b). Nevertheless, the specific reference to Section 5 in close association with an election-of-remedies overlay persuades me that the Legislature did not intend to preempt or supersede other laws per which the full panoply of unlawful practices delineated in Section 5 could be redressed. To the extent *Clay* militates to the contrary, I would take the opportunity to limit its holding to the proposition that the PHRA preempts pertinent common-law claims.

Justice Wecht joins the substance of this concurrence but does not join the majority opinion.

Justice Mundy joins this concurring opinion.