J-A10030-26

2026 PA Super 111

| | | |
|---|---|---|
| GABRIELLA LIBERATORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISOLUTIONS PAYMENTS | : | No. 1509 EDA 2025 |

Appeal from the Order Entered May 29, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 250102437

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY LANE, J.:                                         **FILED MAY 29, 2026**

Gabriella Liberatore ("Liberatore") appeals from the order which sustained the preliminary objections filed by iSolutions Payments ("iSolutions") and dismissed her complaint with prejudice on the basis that she failed to exhaust her administrative remedies before commencing the instant civil action to pursue claims arising under the Philadelphia Fair Practices Ordinance ("the Philadelphia Ordinance").  **See** Phila. Code §§ 9-1100 *et seq*.  After careful review, we affirm.

The relevant factual and procedural history of this matter is as follows. iSolutions is an Indiana-based company with fewer than ten employees. iSolutions hired Liberatore in 2020 to work remotely from her home in Philadelphia as a customer service representative.  Liberatore was the only

_____

[*] Former Justice specially assigned to the Superior Court.

Pennsylvania resident employed by iSolutions. In April 2024, iSolutions terminated Liberatore's employment.

In June 2024, Liberatore filed an administrative complaint with the Pennsylvania Human Relations Commission (the "PHRC"), wherein she asserted claims under the Pennsylvania Human Relations Act ("PHRA"). *See* 43 P.S. §§ 951-963. In the preliminary paragraphs of the administrative complaint, Liberatore generally averred that [iSolutions] discriminated against [Liberatore] due to her sex, subjected [her] to a hostile work environment on the basis of sex, and retaliated against [her] for engaging in protected activity in violation of the PHRA and the Philadelphia . . . Ordinance." Administrative Complaint, 6/28/24, at ¶ 14. Liberatore thereafter asserted two counts for violations of the PHRA. *See id*. Liberatore also cross-filed her administrative complaint with the Equal Employment Opportunity Commission ("EEOC"). Although Liberatore could have filed her administrative complaint with the Philadelphia Commission on Human Relations (the "Philadelphia Commission"), which is authorized to administer discrimination claims arising in Philadelphia under either the PHRA or the Philadelphia Ordinance, she did not do so.

In November 2024, the PHRC dismissed Liberatore's administrative complaint due to lack of jurisdiction because iSolutions did not employ four or more persons in Pennsylvania, as required by the PHRA. *See* 43 P.S. § 954(b). The EEOC similarly dismissed Liberatore's administrative complaint

due to lack of jurisdiction because iSolutions did not employ fifteen or more employees, as required by Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C.A. § 2000e(b). After her claims with the PHRC and the EEOC were dismissed, Liberatore still had time to file her administrative complaint with the Philadelphia Commission, which could have investigated, reviewed, and administered her discrimination claims; however, she did not do so.

Instead, on January 21, 2025, Liberatore filed the instant action in the Philadelphia Court of Common Pleas asserting claims for sexual harassment, sex discrimination, and retaliation in violation of the Philadelphia Ordinance. iSolutions filed preliminary objections on the basis that, *inter alia*, Liberatore failed to exhaust her administrative remedies under the Philadelphia Ordinance because she failed to file a complaint with the Philadelphia Commission. Liberatore responded by acknowledging her obligation to exhaust her administrative remedies. However, she claimed that she sufficiently exhausted her administrative remedies under the Philadelphia Ordinance by filing a complaint with the PHRC. The trial court determined that because the PHRC lacked jurisdiction over her complaint and therefore could not provide administrative relief, Liberatore failed to exhaust her administrative remedies. In the trial court's view, Liberatore deprived the only agency which had jurisdiction over her administrative complaint, *i.e.*, the Philadelphia Commission, of the opportunity to fully investigate, review, and

- 3 -

administer her claims.[1]  On this basis, the trial court sustained iSolutions'

preliminary objections and dismissed the complaint with prejudice.  Liberatore

filed a timely notice of appeal, and both she and the trial court complied with

Pa.R.A.P. 1925.[2]

Liberatore raises the following issue for our review: "Did the trial court

err in sustaining [iSolutions'] preliminary objections . . . for failure to exhaust

administrative remedies since [Liberatore] exhausted administrative remedies

under the Philadelphia Ordinance by filing a complaint with the [PHRC]?"

Liberatore's Brief at 7 (unnecessary capitalization omitted).

Our standard of review of an order sustaining preliminary objections is

to determine whether the trial court committed an error of law.  *See Feingold*

*v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011).  When considering the

appropriateness of a ruling on preliminary objections, the appellate court must

apply the same standard as the trial court.  *See id*.  When considering

_____

[1] The trial court further determined that Liberatore's administrative complaint "did not invoke the Philadelphia Ordinance in either count of her [PHRC] complaint and did not make any actual claims under the [Philadelphia] Ordinance."  Trial Court Opinion, 5/29/25, at 8.  The trial court concluded that Liberatore solely "invoked . . . the [PHRA] and [her] counts for sexual harassment-hostile work environment, and retaliation that were based on the [PHRA] and not the Philadelphia Ordinance, although the Philadelphia Ordinance was briefly mentioned once in passing."  *Id*. at 4.

[2] In lieu of authoring an opinion pursuant to Rule 1925(a), the trial court directed this Court to the opinion it authored at the time it entered its order sustaining the preliminary objections.  *See* Trial Court Opinion, 6/18/25; *see also* Trial Court Opinion, 5/29/25.

preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. *See id*. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. *See id*.

Our Supreme Court has explained the doctrine of exhaustion of administrative remedies as follows:

> The doctrine of exhaustion of administrative remedies requires a party to exhaust all adequate and available administrative remedies before the right of judicial review arises. The doctrine is a court-made rule intended to prevent premature judicial intervention into the administrative process. A court is to defer judicial review where the question presented is one within an agency specialization and where the administrative remedy is likely to produce the desired result. The doctrine operates as a restraint on the exercise of a court's equitable powers and a recognition of the legislature's direction to comply with statutorily-prescribed remedies.

*Empire Sanitary Landfill v. Dep't of Envtl. Res.*, 684 A.2d 1047, 1053 (Pa. 1996) (citations and quotation marks omitted). The primary purpose of the exhaustion doctrine is to ensure that claims will be addressed by the body having expertise in the area. *See Lehman v. Pa. State Police*, 839 A.2d 265, 275 (Pa. 2003). This is particularly important where the ultimate decision rests upon factual determinations lying within the expertise of the agency, or where agency interpretations of relevant statutes or regulations are desirable. *See id*.

"The General Assembly, recognizing the invidiousness and the pervasiveness of the practice of discrimination, attempted by the PHRA to create a procedure and an agency specially designed and equipped to attack this persisting problem and to provide relief to citizens who have been unjustly injured thereby." *Fye v. Cent. Transp., Inc.*, 409 A.2d 2, 4 (Pa. 1979). By enacting the PHRA, the Pennsylvania Legislature chose to empower the PHRC with the jurisdiction to initially receive, investigate, conciliate, hear, and decide complaints alleging unlawful discrimination by employers of four or more employees within the Commonwealth. *See Clay v. Advanced Comput. Applications*, 559 A.2d 917, 919 (Pa. 1989); *see also* 43 P.S. § 954(b). In order to submit a claim under the PHRA, the aggrieved party must file an administrative complaint with the PHRC within 180 days of the date of the alleged discriminatory conduct. *See* 43 P.S. § 959(h).

The Legislature intended that the PHRC should have exclusive jurisdiction of a complaint alleging violations under the PHRA for a period of one year in order to conduct an investigation of the charges and, if possible, conciliate the matter. *See Clay*, 559 A.2d at 920. The reason for this exclusivity provision is because the PHRC possesses a "particular expertise" in the area of unlawful discrimination not possessed by the courts. *Lukus v. Westinghouse Elec. Corp.*, 419 A.2d 431, 455 (Pa. Super. 1980); *see also Clay*, 559 A.2d at 919 (noting that the expertise of the PHRC should not be lightly regarded). The expertise which the PHRC has in this area, and which

the courts of common pleas do not possess, motivated the Legislature to limit aggrieved parties from seeking remedies in the courts until after they had exhausted PHRC administrative remedies. **See Clay**, 559 A.2d at 919. If aggrieved employees were permitted to circumvent the PHRC by simply filing claims in court, it would frustrate the statutory scheme and "result in the very sort of burdensome, inefficient, time consuming, and expensive litigation that the PHRC was designed to avert, and would substantially undermine the proper role of the PHRC." **Id**. at 920; **see also Lukus**, 419 A.2d at 455 (holding that "[b]y requiring a complainant first to repair to the PHRC, the Legislature ensured maximum use of the PHRC's expertise, thereby minimizing the inefficient use of judicial resources (and its attendant expense and embarrassment of the parties)").

However, by requiring the initial utilization of administrative remedies, an aggrieved party is not deprived of the ability to ultimately resort to the courts. Upon the expiration of the one-year period of administrative review, the PHRA provides for a private right of action to be pursued in the courts:

> In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.

43 P.S. § 962(c).

Our Supreme Court has further explained that, in lieu of submitting an administrative complaint with the PHRC, an aggrieved party may pursue other available administrative remedies relating to discrimination:

> Although attempting to fashion a special remedy to meet this illusive and deceptive evil, the General Assembly did not withdraw the other remedies that might be available depending upon the nature of the injury sustained. The legislature recognizing that the effectiveness of the procedure it had created would be enhanced by the exclusivity of the provisions of the Act, and the undesirability of allowing the person aggrieved to commence several different actions for relief . . . provided an election for the complaining person to opt for relief under the provisions of PHRA or the right to seek redress by other remedies that might be available.

*Fye*, 409 A.2d at 4. Such "other remedies" do not include civil actions, but instead refer to administrative remedies existing under the provisions of any municipal ordinance, municipal charter, or of any law of this Commonwealth relating to discrimination. *See Clay*, 559 A.2d at 921; *see also Harrison v. Health Network labs. Ltd. P'ship*, 232 A3d 674, 683 (Pa. 2020) (explaining that the reference to "other remedies" contemplates municipal ordinances or charters relating to discrimination, and noting that an aggrieved party is not mandated to invoke the PHRA's procedures when other laws provide a cognizable remedy based on the harm alleged).

One such municipal ordinance is the Philadelphia Ordinance, which was decreed by the City of Philadelphia to address discrimination.[3] The Ordinance is intended to ensure that all persons regardless of race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), reproductive health autonomy, sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, source of income, familial status, genetic information and domestic or sexual violence victim status enjoy the full benefits of citizenship and are afforded equal opportunities for employment, housing and use of public accommodation facilities. *See* Phila. Code § 9-1101(1)(3). The Philadelphia Ordinance applies to all persons who do business in the city of Philadelphia through employees or who employ one or more employees. *See* Phila. Code § 9-1102(h).

The Philadelphia Ordinance further provides that any person claiming to be aggrieved by an unlawful employment practice may file an administrative complaint within 300 days of the occurrence of the alleged unlawful practice. *See* Phila. Code § 9-1112(1), (3). The Philadelphia Ordinance contemplates

---

[3] The PHRA includes enabling legislation for the establishment of local human relations commissions. Specifically, the PHRA provides that local governments "shall have the authority to grant to local commissions powers and duties similar to those now exercised by the [PHRC] under the provisions of [the PHRA]." 43 P.S. § 962.1. Pursuant to the authority granted by section 962.1, Philadelphia established the Philadelphia Commission to administer and enforce statutes and ordinances prohibiting unlawful practices of discrimination.

that, upon the filing of a timely administrative complaint, the Philadelphia Commission will serve the complaint on the respondent, and then make a prompt investigation during which it may serve subpoenas to obtain interviews, information, or documentation. **See** Phila. Code § 9-1115. If the Philadelphia Commission "determines that probable cause exists for the allegations in the complaint," it can immediately endeavor to eliminate the unlawful practice by negotiation, holding hearings, or ordering mediation, dispute resolution, or conciliation. **Id**. at §§ 9-1114, 9-1115, 9-1116, 9-1117. If the Commission makes a final determination that the respondent has engaged in an unlawful practice, it shall thereafter issue its findings of fact, and a cease-and-desist order. **Id**. at § 9-1118.

Like the PHRA, the Philadelphia Ordinance also provides a subsequent private right of action, to be pursued after a one-year period of administrative review:

> If a complainant invokes the procedures set forth in this Chapter, that person's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the [Philadelphia] Commission, the [Philadelphia] Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the [Philadelphia] Commission must so notify the complainant. On receipt of such a notice the complainant may bring an action in the Court of Common Pleas of Philadelphia County based on the right to freedom from discrimination granted by this Chapter.

**Id**. at § 9-1122(1).

As the above provisions make clear, both the PHRA and the Philadelphia Ordinance were enacted to address the pervasive evil of discrimination within this Commonwealth. As noted above, the Ordinance applies to employers with one or more employees in Philadelphia, whereas the PHRA applies to employers with four or more employees anywhere in the Commonwealth. Thus, whereas the Ordinance has a city-wide application, the PHRA has a statewide application. Although the Ordinance does not apply beyond the city limits of Philadelphia, there is the potential for both the Ordinance and the PHRA to apply to the same discrimination claims where an employer employs four or more persons in Pennsylvania, with at least one such person being employed in Philadelphia. Under such circumstances, both the PHRC and the Philadelphia Commission would have jurisdiction over the administrative complaint and both agencies could receive, investigate, conciliate, hear, and decide complaints alleging unlawful discrimination by the employer. However, under these limited circumstances where there is dual jurisdiction between the Philadelphia Commission and the PHRC, if a complainant were to file an administrative complaint with both agencies, there could be duplicative and redundant expenditures of resources by the two agencies to the extent they were investigating the same discrimination claims asserted by the same individual against the same employer.

Notably, in recognition of the expertise that local agencies, such as the Philadelphia Commission, possess to investigate and decide employment

- 11 -

discrimination complaints, the Pennsylvania Legislature amended the PHRA in 1991 to allow the Pennsylvania Commission to enter into work sharing agreements with local agencies such as the Philadelphia Commission. *See* 43 P. S. § 957(n). As a result, filing a complaint with the Philadelphia Commission satisfies the PHRA's requirement that a plaintiff exhaust administrative remedies. Further, in an apparent attempt to avoid such duplicative efforts, the Philadelphia Ordinance provides that "[t]he [Philadelphia] Commission shall not accept a complaint from any person who has filed a complaint with the [PHRC] with respect to the same grievance." *Id*. at § 9-1112(4).

Recently, in ***Jones v. Foods on First III Inc.***, 345 A.3d 231 (Pa. Super. 2025), a panel of this Court considered section 9-1112(4) as a matter of first impression. In ***Jones***, the plaintiff experienced discrimination within her employment at a restaurant in Philadelphia. Although not expressly indicated in ***Jones***, it is apparent that the restaurant in Philadelphia at which Jones was employed had four or more Pennsylvania employees, such that both the Philadelphia Ordinance and the PHRA applied to her discrimination claims. Jones filed an administrative complaint with the PHRC, asserting claims solely under the PHRA. The PHRC exercised jurisdiction over her complaint, administratively investigated and reviewed her claims, and ultimately provided her with right to sue letter after the one-year period of administrative review had expired. Jones thereafter filed a civil complaint in the Philadelphia Court of Common Pleas asserting claims under both the PHRA and the

Philadelphia Ordinance for the same conduct that she alleged in her administrative complaint filed with the PHRC. The defendant employer argued that, with respect to Jones' claims under the Philadelphia Ordinance, she failed to exhaust her administrative remedies because she had not also filed an administrative complaint with the Philadelphia Commission. In advancing this argument, the defendant employer relied on section 9-1112(4), and argued that it should be interpreted to mean that if a claimant opts to file an administrative complaint with the PHRC, any claim under the Philadelphia Ordinance is foreclosed.

The **Jones** Court rejected this argument. In so doing, the **Jones** Court looked to federal caselaw for guidance as to how to interpret section 9-1112(4). The **Jones** Court credited the reasoning by a federal district court that section 9-1112(4) "is better understood as divvying up the procedural workload of investigating discrimination claims between the PHRC and the Philadelphia Commission — *i.e.*, a pragmatic measure to prevent dual and redundant proceedings between the two agencies." **Id**. at 242 (*quoting* **Higgins v. MetLife Inc.**, 687 F.Supp.3d 644, 655 (E.D. Pa. 2023)). In the **Jones** Court's view, because Jones had "followed the proper channels pursuant to the PHRA, and her filing there related to the same conduct included in her [Philadelphia Ordinance] counts, she was not required to submit a redundant filing to the [Philadelphia] Commission." **Id**. On this basis, the **Jones** Court determined that "the [Philadelphia Ordinance] does

not require a complainant to file a complaint with the Philadelphia Commission prior to filing a suit in state court if a submission relating to the same conduct has been made with the PHRC." *Id*.

With this background in mind, we turn to Liberatore's specific contentions on appeal.[4]  Initially, Liberatore argues that she asserted claims under the Philadelphia Ordinance in her administrative complaint.  According to Liberatore, the fact that the two counts in her administrative complaint only mentioned the PHRA and not the Philadelphia Ordinance does not mean that she failed to invoke the Philadelphia Ordinance.  Liberatore points to the preliminary paragraph of her administrative complaint, where she asserted that iSolutions' discriminatory, harassing, and retaliatory behavior violated the PHRA and the Philadelphia Ordinance.  Liberatore argues that her single reference to the Philadelphia Ordinance in her administrative complaint was sufficient to invoke the Philadelphia Ordinance.

Liberatore further contends that "once she filed a complaint in the PHRC alleging violations of the [Philadelphia Ordinance], she exhausted her remedies."  Liberatore's Brief at 19 (unnecessary capitalization omitted).

_____

[4] At the time Liberatore filed her appellant's brief, she did not have the benefit of this Court's decision in *Jones*.  As such, Liberatore devotes a significant portion of her brief to a discussion of federal case law, such as *Higgins*, which considered section 9-1112(4) of the Philadelphia Ordinance, and how that section should be interpreted.  *See* Liberatore's Brief at 12-18.  However, as we now have the guidance provided by *Jones*, we decline to consider Liberatore's discussion of either Commonwealth Court or federal case law to the extent that it involves issues which have been resolved by *Jones*.

According to Liberatore, the fact that her administrative complaint was dismissed by the PHRC for lack of jurisdiction does not preclude a determination that she exhausted her remedies under the Philadelphia Ordinance. Liberatore also claims that exhaustion occurred because the PHRC had to conduct some amount of investigation before it concluded that iSolutions could not have violated the PHRA due to an insufficient number of employees in Pennsylvania. According to Liberatore, "[t]his is not a matter of whether the PHRC had jurisdiction to investigate [Liberatore's] case; rather, this was the PHRC concluding that no violation of the PHRA occurred because [iSolutions] was not an employer as defined by the PHRA." *Id*. at 23.

The trial court considered Liberatore's issue and determined that it lacked merit. The court reasoned:

> Although [Liberatore] filed [PHRA] claims with the [PHRC], she did not file any of her Philadelphia Ordinance claims with the [PHRC]. The [PHRC] held that it lacked jurisdiction over the [PHRA] claims. The Philadelphia Commission was the only agency with proper jurisdiction over [Liberatore's] claims, but [she] never filed an administrative complaint with that agency. Therefore, iSolutions argues, [Liberatore] failed to exhaust her available administrative remedies and her civil action complaint must be dismissed with prejudice.
>
> [Liberatore] ignores that the thrust of the preliminary objections is her failure to exhaust her remedies under the Philadelphia Ordinance. Instead, her complaint asserts that she exhausted her administrative remedies by merely filing her complaint with the [PHRC] (even though it lacked jurisdiction) and by filing the instant civil action within two years from the [PHRC's] notification that her case was being dismissed for lack of subject matter jurisdiction.

* * * *

- 15 -

[T]he entire purpose of requiring exhaustion of administrative remedies is to permit the [PHRC] and the Philadelphia Commission to bring to bear their expertise and specialized knowledge of the issues of discrimination, sexual harassment, hostile work places, and retaliation by employers. That purpose is not fulfilled by filing a complaint with an agency lacking the jurisdiction to consider a complaint raising such issues.

\* \* \* \*

Ms. Liberatore voluntarily and knowingly chose to first file a complaint with the [PHRC] instead of with the Philadelphia Commission. Pre-complaint research should have revealed that the [PHRC] lacked subject matter jurisdiction over her claims. [Liberatore] could have filed her complaint originally with the Philadelphia Commission, which was the only administrative body with subject matter jurisdiction over her claims. But [she] never filed an administrative complaint with the Philadelphia Commission and never submitted her Philadelphia Ordinance claims to the [PHRC]. Therefore, plaintiff failed to exhaust her available administrative remedies and her civil action complaint was dismissed with prejudice by this court.

Trial Court Opinion, 5/29/25, at 7, 12-13 (footnote omitted).

We initially address the trial court's determination that Liberatore is not entitled to relief because she did not adequately invoke the Philadelphia Ordinance within her administrative complaint filed with the PHRC. Notably, like Liberatore, the plaintiff in **Jones** filed an administrative complaint solely with the PHRC alleging claims solely under the PHRA. In her administrative complaint, Jones did not invoke the Philadelphia Ordinance or assert any claims under the Ordinance. After the PHRC had administratively investigated and reviewed her PHRA claims for a one-year period, it issued Jones a right to sue letter. Jones thereafter filed a civil complaint in the Philadelphia Court of

Common Pleas wherein she asserted discrimination claims under both the PHRA and the Philadelphia Ordinance. As explained above, the *Jones* Court ruled that a complainant need not submit a redundant filing to both the Philadelphia Commission and the PHRC. *See Jones*, 345 A.3d at 242. Moreover, it was of no moment that Jones did not assert any claim under the Philadelphia Ordinance when she filed her administrative complaint with the PHRC. *See id*. Instead, the controlling factor for purposes of the exhaustion doctrine was that the discriminatory conduct that Jones alleged in her civil complaint was the same discriminatory conduct that she had alleged in her administrative complaint, which she had properly submitted to an appropriate agency for its full review, investigation, and administration.

However, we emphasize that implicit in the *Jones* Court's analysis and ruling was that both the PHRC and the Philadelphia Commission had jurisdiction to review, investigate, and fully administer Jones' discrimination claims because her employer employed four or more employees in Pennsylvania and one or more employees in Philadelphia. Thus, we clarify that *Jones* is controlling where *both* the Philadelphia Ordinance and the PHRA apply to a particular discrimination claim such that *both* the Philadelphia Commission and the PHRC have jurisdiction to administratively review, investigate, and fully process the claim. Under these circumstances, *Jones* provides that the claimant may either file an administrative complaint with the Philadelphia Commission or the PHRC. Where such dual jurisdiction exists,

and the claimant elects to file an administrative complaint with the PHRC asserting claims solely under the PHRA, and the PHRC has utilized its expertise in the area of discrimination by administratively investigating, reviewing, and fully processing the claim, upon receiving a right to sue letter, the claimant is not precluded from asserting claims under the Philadelphia Ordinance in a civil complaint filed in the Philadelphia Court of Common Pleas where the discriminatory conduct asserted in the civil complaint relates to the same discriminatory conduct asserted in the administrative complaint filed with the PHRC. **See Jones**, 345 A.3d. at 242. Consequently, pursuant to **Jones**, the fact that Liberatore did not specifically assert claims under the Philadelphia Ordinance in her administrative complaint filed with the PHRC is not, without more, a sufficient basis to dismiss her claims under the Ordinance.

We must next address the separate question of whether Liberatore's filing of an administrative complaint with the PHRC, which did not have jurisdiction over her claims and dismissed her complaint on the basis that iSolutions did not employ four or more persons in the Commonwealth, constitutes exhaustion of her administrative remedies. Our independent research has revealed no binding Pennsylvania authority on the question of whether the filing of an administrative complaint with an agency that lacks jurisdiction to provide administrative relief for the claims asserted therein, and therefore dismisses the complaint without conducting a full investigation and

administrative review of the claims, constitutes exhaustion of administrative remedies.

Notwithstanding, our Courts have provided some guidance in this area. Our Supreme Court has made it clear that a claimant must "exercise the proper methods for addressing their grievances," and that where a litigant has "failed to pursue their exclusive statutory remedy for sexual harassment and discrimination in the workplace, they are precluded from relief." ***Clay***, 559 A.2d at 919, 921; ***see also Feingold v. Bell of Pennsylvania***, 383 A.2d 791, 793 (Pa. 1977) (explaining that full utilization of the expertise derived from the development of various administrative bodies, possessing expertise and broad regulatory and remedial powers, would be frustrated by indiscriminate judicial intrusions into matters within the various agencies' respective domains").

Further, this Court has ruled that "invocation of the procedures set forth in the [PHRA] entails more than the filing of a complaint; it includes the good faith use of the procedures provided for disposition of the complaint." ***See Lukus***, 419 A.2d at 454. "By requiring a complainant first to repair to the PHRC, the Legislature ensured maximum use of the PHRC's expertise, thereby minimizing the inefficient use of judicial resources." ***Id***. at 455. For this reason, an aggrieved party must make a good faith effort to exhaust their administrative remedies by permitting the pertinent agency "an opportunity to resolve [the] controversy." ***Schweitzer v. Rockwell Int'l***, 586 A.2d 383,

387 (Pa. Super. 1990) (holding that the complainant failed to exhaust her administrative remedies where she did not provide the PHRC an opportunity to resolve her controversy in the relatively short time period allotted by the PHRA when, nine months after filing her administrative complaint, she requested that the PHRC transfer her case to the EEOC and, pursuant to her request, the PHRC closed her case and transferred it to the EEOC); *see also Snyder v. Pa. Ass'n of School Retirees*, 566 A.2d 1235 (Pa. Super. 1989) (holding that the claimant failed to exhaust administrative remedies and could not seek redress in the courts where the claimant withdrew the administrative complaint before the expiration of the one year time limit in section 962(c), and that such withdrawal operated to deprive the trial court of jurisdiction).

Federal courts considering this issue have similarly ruled that when an aggrieved party prematurely withdraws an administrative complaint within the one-year period and prior to the agency's determination on the claims presented, the aggrieved party has not exhausted their administrative remedies. *See Kenne v. SEPTA*, 2014 U.S. Dist. LEXIS 129951, at *5 (E.D. Pa. 2014)[5] (holding that the claimant did not exhaust his administrative remedies where he withdrew his administrative complaint one week after initiating it, and did not permit the PHRC nor the EEOC to make any

---

[5] While decisions of the lower federal courts are not binding on this Court, we may consider those decisions for their persuasive value. *See Dietz v. Chase Home Finance, LLC*, 41 A.3d 882, 886 n.3 (Pa. Super. 2012).

determinations on his claims); *see also Richards v. Foulke Assocs.*, 151 F. Supp. 2d 610, 613 (E.D. Pa. 2001) (noting that it is well settled that withdrawal of one's claims prior to a determination by the proper administrative agency constitutes failure to exhaust one's remedies, and concluding that, since plaintiff voluntarily removed her claim from consideration by the Philadelphia Commission, no agency was given an opportunity to fully investigate the merits of her claim and it therefore was never subjected to proper administrative review); *Rhoades v. Young Women's Christian Ass'n of Greater Pitts.*, 2010 U.S. Dist. LEXIS 119008 (W.D. Pa. 2010) (holding that, even if the claimant had sufficiently filed a complaint with the PHRC, she failed to exhaust her administrative remedies with respect to those claims when she withdrew them from the PHRC); *Ellis v. Mohenis Servs., Inc.*, 1997 U.S. Dist. LEXIS 8934 (E.D. Pa. 1997) (holding that where the claimant's attorney sent a letter to the PHRC requesting that it not go forward with its investigation, the claimant had not made use of the PHRA's procedures).

Here, unlike in *Jones*, the PHRC did not have jurisdiction over the claims asserted in Liberatore's administrative complaint because iSolutions did not employ four or more persons in the Commonwealth, as required by 43 P.S. § 954(b). Therefore, the PHRC was unable to utilize or apply any of its specialized expertise and experience with respect to the handling of discrimination claims to administratively review and investigate Liberatore's

claims of discrimination by iSolutions. The purpose of the exhaustion requirement is to give the appropriate administrative agency an opportunity to investigate the matter in the first instance, because they possess particular expertise and specialized knowledge of the issues of discrimination, sexual harassment, hostile workplaces, and retaliation by employers, which expertise is not possessed by trial courts. The legislative purpose of the PHRA and the Philadelphia Ordinance is frustrated when an aggrieved party files an administrative complaint with an agency that lacks jurisdiction to apply its expertise and resources to a claim of discrimination. Accordingly, we conclude that the merely filing of an administrative complaint with the PHRC, where the PHRC lacks jurisdiction over the complaint and is precluded from fully investigating the merits of the claim, cannot be regarded as submitting a discrimination claim for proper administrative review for purposes of the exhaustion doctrine.

Here, Liberatore could have filed her administrative complaint with the Philadelphia Commission, which was authorized to review, investigate, and administer her discrimination claims against iSolutions. By failing to file an administrative complaint with the only agency which could provide her with administrative relief, no agency was given an opportunity to fully investigate the merits of Liberatore's discrimination claims. Thus, as Liberatore failed to submit her discrimination claims to an appropriate agency for proper administrative review, she failed to exhaust her administrative remedies.

Accordingly, we are constrained to affirm the order sustaining the preliminary objections filed by iSolutions.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/29/2026